**Kimberly Lynn ALLEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–04–00235–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 23, 2008.

---

Robert "Bob" Wicoff, Houston, TX, for appellant.

Peyton Z. Peebles, III, Assistant District Attorney, Houston, TX, for appellee.

Panel consists of Chief Justice RADACK and Justices JENNINGS and HANKS.

## OPINION ON REMAND

GEORGE C. HANKS, JR., Justice.

A jury found appellant, Kimberly Lynn Allen, guilty of assault, and the trial court assessed punishment at 180 days' confinement, suspended the sentence, and placed appellant on community supervision for one year, with a $500 fine, 80 hours of community service, and various other conditions of community supervision. In three points of error, appellant complained that the evidence was legally and factually insufficient to disprove the defense of consent and the trial court failed to charge the jury that, if the State had failed to persuade the jury beyond a reasonable doubt that the complainant did not consent to the assault, it was required to acquit appellant. We reversed the judgment on grounds that appellant was egregiously harmed by the trial court's failure to properly instruct the jury on the defense of consent, but the court of criminal appeals found that appellant did not suffer "actual egregious harm" as a result of the omission, and accordingly, reversed our judgment and remanded the case to this Court. *Allen v. State,* 253 S.W.3d 260, 266 (Tex.Crim.App.2008). On remand, we affirm the trial court's judgment.

## Background

Kimberly Ryan and her fiancé went to a Denny's Restaurant in the early-morning hours of December 14, 2002. When Ryan and her fiancé arrived, the restaurant was not crowded, and she noticed three women sitting at a nearby table. Ryan testified that the women, appellant and two companions, were so loud that her fiancé had to move to sit closer to her so that she could hear him talk. The noise continued, so Ryan turned around and said "do you mind" to the "raucous" and "obnoxious" women. Appellant, who was sitting at the other table, responded by announcing, "I'm not going to let some white f* * *ing bitch tell me what I'm going to do. I'm going to kick her f* * *ing a* *." Ryan testified that she was afraid, and the "verbal assault" escalated. She called for emergency assistance because she "felt like [she] was about to get hurt."

Ryan testified that the Denny's manager/waitress told appellant and her companions that they were going to have to leave, appellant responded "you can't make us leave," and that a "tug-o-war ensued with a plate." Appellant told the waitress "you are not going to f* * *ing make us leave. I'm going to kick your f* * *ing a* *." The waitress was doused with the contents of a coffee cup and appeared "shocked, frightened, dismayed." As appellant was leaving, she walked back to Ryan's fiancé and said "I'm not going to let a white, motherf* * *ing, faggot tell me what to do. And just because I take it up the a* *, doesn't mean I'm going to take it from that white motherf* * *er."

Appellant walked to the front of the restaurant, and Ryan saw someone else walk up to the front as well. Ryan testified that she "didn't hear the words that were said, but the body language that I saw, the other person kind of reared her hands back and, I don't know what was said but, [appellant] came around and just ... it wasn't a full on punch ... she just whacked her in the side of the head" and caused her to bleed above her eyebrow. She explained that it did not look like the other person was preparing to hit appellant, but, instead "it was like, go ahead and hit me." The woman did not take a swing at or hit appellant. The police arrived within seconds and took appellant away. Ryan testified that appellant was "fighting" with the police and "kicking in the air" and "flailing" as they led her to a patrol car.

Jackie Dubendorf, the complainant, testified that she and two friends arrived at

the Denny's for breakfast around 3:30 a.m. after getting off work. She was talking with her friends when she heard voices "hollering at each other and threatening people" on the other side of the restaurant. She heard them say, "I'm going to f* * *ing kill the waitress." The complainant saw the three women walk up to the cashier and call him a "f* * *ing faggot." The complainant felt sorry for the cashier, so she got up and told appellant "that she wasn't impressing anybody." Appellant responded, "I sure the f* * * ain't trying to impress you. I ought to walk over there and slap the f* * * out of you." The complainant then "stood back with [her] arms out to [her] side and said, then, slap me." Appellant hit her over the left eyebrow, which caused the complainant's pierced eyebrow ring to rip out and bleed. The complainant ducked down, and appellant swung at her again, and the complainant swung back making contact with appellant. The police arrived and restrained appellant. Appellant screamed, "Get the f* * * off of me. Why aren't you jumping on that white b* * *h." The complainant watched appellant "wrestling and struggling with the police."

Appellant was arrested and charged with misdemeanor assault. The jury was instructed on the defenses of self-defense and consent.

## Factual Sufficiency

The Court of Criminal Appeals held that appellant was not actually harmed by the trial court's erroneous instruction as to the defense of consent. Accordingly, on remand, we are directed to address appellant's remaining point of error challenging the factual sufficiency of the evidence to disprove the defense of consent.

## Standard of Review

■ In conducting a factual sufficiency review, we view all of the evidence in a neutral light. *Ladd v. State*, 3 S.W.3d 547,

557 (Tex.Crim.App.1999). Our factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App.2003). Our neutral review of all the evidence, both for and against the challenged elements, looks to determine whether proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or whether proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *See Zuniga v. State*, 144 S.W.3d 477, 484–85 (Tex.Crim.App.2004); *see also Zuliani v. State*, 97 S.W.3d 589, 593–94 (Tex.Crim.App.2003).

■ When a defendant challenges the factual sufficiency of the rejection of a defense, the reviewing court employs the same standard of review articulated in *Zuniga* because once the defendant has met his or her burden of production of evidence as to a defense, the State bears the burden to prove appellant's guilt of the charged offense beyond a reasonable doubt. *See Zuniga*, at 484; *Zuliani*, 97 S.W.3d at 595. A guilty finding is an implicit rejection of the defense. *Zuliani*, 97 S.W.3d at 594.

■ We remain mindful of the jury's role to resolve conflicts in testimony. *See Mosley v. State*, 983 S.W.2d 249, 254 (Tex.Crim.App.1998) (declaring that questions concerning the credibility of witnesses and the weight given their testimony are to be resolved by the trier of fact); *see also Esquivel v. State*, 506 S.W.2d 613, 615 (Tex.Crim.App.1974). We must assume that the fact finder resolved conflicts, including conflicting inferences, in favor of the verdict, and must defer to that resolution. *Matchett v. State*, 941 S.W.2d 922, 936 (Tex.Crim.App.1996). The fact finder alone determines the credibility of the witnesses and may choose to believe all, some, or none of the testimony presented. *Cain*

*v. State,* 958 S.W.2d 404, 407 n. 5 (Tex. Crim.App.1997). We may not conclude that the evidence is factually insufficient simply because we disagree with the verdict. *Watson v. State,* 204 S.W.3d 404, 417 (Tex.Crim.App.2006).

**Defense of Consent**

■ Appellant argues that, when reviewed in a neutral light, the evidence is insufficient to support the jury's implied finding against the defense of consent.

■ Assault is defined as intentionally or knowingly causing bodily injury to another. TEX. PEN.CODE ANN. § 22.01(a) (Vernon Supp.2008). Consent as a defense to prosecution requires the victim's effective consent, or, if the conduct did not threaten or result in serious bodily injury, the actor's reasonable belief that the victim consented to the conduct. *Id.* § 22.06(1) (Vernon Supp.2008). The defense of consent requires *effective* consent which is defined by the Texas Penal Code as consent by a person legally authorized to act. *Id.* § 1.07(a)(19)(A) (Vernon Supp. 2008). Consent is not *effective* when induced by force, threat, or fraud. *Id.* The issue of consent as a defense is an issue of fact to be determined by a jury. *See Saxton,* 804 S.W.2d at 913 (The "issue of self-defense is an issue of fact to be determined by the jury.").

■ If the issue of the existence of a defense is submitted to the jury, the trial court shall charge that, if there is a reasonable doubt on the issue, the defendant should be acquitted. TEX. PEN.CODE ANN. § 2.03(d). After the issue has been properly raised by the evidence, the State is not required to disprove a defense beyond a reasonable doubt. *Saxton,* 804 S.W.2d at 913. It is the defendant's burden to produce evidence raising the defense, after which the burden shifts to the State. *Id.* The burden placed on the State is not one of producing evidence to refute the defen-

sive claim, but rather to prove its assault case beyond a reasonable doubt. *Id.*

Here, it is undisputed that appellant slapped the complainant. Appellant contends that the statement made by the complainant—"then slap me"—and the testimony of several witnesses who testified that the complainant urged "go ahead," "come on," "slap me," and "hit me" conclusively prove that the complainant consented to, and even "invited" the assault. The State argues that statements such as "hit me" are not forms of consent when the alleged consent occurred after the assaultive conduct began, and that such statements are merely "smart-alec" remarks that cannot reasonably be construed as an actual invitation to assault someone. The evidence reveals that appellant did, in fact, threaten the complainant before the complainant told appellant to "go ahead" and slap her, and we must defer to the jury's role in assessing the testimony of the actors and witnesses to determine the plausibility of the appellant's argument that complainant had effectively invited the assault. Indeed, as the Court of Criminal Appeals observed, "Common experience tells us that such apparent bravado ... far more likely constitutes a backhanded warning of potentially dire consequences ..." than an actual invitation to assault. *Allen v. State,* 253 S.W.3d 260, 268 (Tex. Crim.App.2008).

Viewing the evidence neutrally, we conclude that the State's evidence was not too weak to support the jury's rejection of appellant's defense of consent, nor was the proof of guilt, although adequate if taken alone, against the great weight and preponderance of the evidence. Accordingly, we hold that the evidence is factually sufficient to support appellant's conviction.

We overrule appellant's remaining point of error.

## Conclusion

We affirm the trial court's judgment.