# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 27, 2021

Lyle W. Cayce
Clerk

No. 20-20387

Janet Prim; Eric Prim,

*Plaintiffs—Appellants*,

*versus*

Deputy Stein; Lieutenant Webb; Detective Terrell;
John Harshaw; Montgomery County, Texas; The Center
for the Performing Arts at the Woodlands; Live
Nation Worldwide, Incorporated,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-1774

Before Higginbotham, Stewart, and Wilson, *Circuit Judges*.
Carl E. Stewart, *Circuit Judge*:

Eric and Janet Prim ("the Prims") were arrested for public intoxication while attending a concert in The Woodlands, Texas. They sued the concert venue as well as Montgomery County ("the County") and several Montgomery County officers for violations of federal law. The district court granted summary judgment in favor of the Defendants. We AFFIRM in part and REVERSE and REMAND in part.

No. 20-20387

## I. FACTUAL AND PROCEDURAL HISTORY[1]

On the evening of June 17, 2018, the Prims attended a 7pm concert at the Cynthia Woods Mitchell Pavilion ("the Pavilion") in The Woodlands, Texas.[2] Live Nation Worldwide Incorporated produces and promotes the Pavilion's events.

Before the concert,[3] the Prims had dinner and consumed approximately three glasses of wine each. At the concert, the Prims each consumed an additional two glasses of wine between 7:15pm and 10pm. As the Prims were leaving the concert, Janet was "stumbling, unstable, [and] holding onto things." John Harshaw, a Pavilion employee, noticed Janet's stumbling and came over to offer his assistance. Harshaw used his radio to call for a wheelchair for Janet.

Harshaw escorted the Prims to the Pavilion's security office. Eric continued to talk with Harshaw, and Harshaw smelled alcohol on Eric's breath. Eric also spoke with Deputy Stein, who had been working traffic at the Pavilion and was called to help with the Prims. Deputy Stein saw Eric sway and noticed that Eric had difficulty standing, had bloodshot eyes, and slurred speech. Eric told Deputy Stein that he had been drinking both before and during the concert. Deputy Stein administered a horizontal gaze nystagmus test to Eric, and Eric failed it twice because he could not hold his head still.

Janet suffers from multiple sclerosis ("MS"), and her symptoms include stumbling, inability to recall, and vision loss. Once at the security office, Janet was evaluated by Charles Tatum, a medic. Tatum involved police after

---

[1] Since the Prims are the non-movants, we construe the evidence in the light most favorable to them. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970).

[2] The Pavilion is also known as the Center for the Performing Arts at the Woodlands.

[3] Dinner occurred sometime between 4 and 7pm on June 17, 2018.

No. 20-20387

suspecting that Janet was drunk to ensure that Janet did not attempt to drive herself home. Tatum called Lieutenant Webb, who spoke with Janet and observed that Janet had red eyes, trouble answering questions, and had admitted to drinking. Janet was unable to hold a conversation with Lieutenant Webb and was unable to stand on her own.

The Prims insisted on walking home since they "lived on the other side of the golf course." To walk home, the Prims would have had to cross two intersections (including a busy parkway) in the dark. Both Prims were stumbling, had red eyes, slurred speech, and other indicators of intoxication. Rather than permit them to walk home in their condition, the officers tried to find the Prims a ride home. The officers asked Eric to provide information so that the officers could call someone to pick the Prims up. Eric did not have a cell phone on him at the time and said he did not know the numbers of anyone the officers could call. Unable to find the Prims a ride home, Deputy Stein arrested them for public intoxication. The charges against the Prims were ultimately dismissed.

On May 30, 2018, Janet and Eric filed a lawsuit in the Southern District of Texas. They asserted 42 U.S.C. § 1983 claims against the County and Deputy Stein, Lieutenant Webb, and Detective Terrell for alleged violations of the Fourth Amendment. They alleged that the County and the Pavilion Defendants violated their rights under the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("Rehab Act"). They also asserted false imprisonment, assault, negligence, gross negligence, and intentional infliction of emotional distress[4] claims against the Pavilion Defendants.

---

[4] The Prims do not present an argument that the district court erred in granting summary judgment on their claim for intentional infliction of emotional distress. Any potential argument has been abandoned on appeal. *See Mackey v. Astrue*, 486 F. App'x 421, 423 (5th Cir. 2012) (per curiam).

In March 2019, the Pavilion Defendants moved for summary judgment. The district court granted their motion. In July 2019, the County and the officers moved for summary judgment. The district court granted the motion. This appeal follows.

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.*

## III. DISCUSSION

The Prims maintain that the district court erroneously granted summary judgment in favor of the Pavilion Defendants, Montgomery County, and the Montgomery County officers.

### *A. Pavilion Defendants*

The Prims argue that they were assaulted, falsely imprisoned, and harmed by the Pavilion Defendants' negligence and that the district court erred by granting the Pavilion Defendants' motion for summary judgment. We agree with the district court on most claims, but we disagree about Eric Prim's assault claim.

*1. Assault*

Both Eric and Janet Prim contend that they were assaulted by the Pavilion Defendants. Janet claims that she was assaulted when she was forced into a wheelchair by an unknown individual. Eric says that Harshaw assaulted him by grabbing his arm while they walked to the Pavilion's security office. The district court disagreed, granting summary judgment in favor of the Pavilion Defendants. We agree that Janet's claim fails. Eric's claim, however, raises a genuine factual dispute that should be resolved by a factfinder.

"A person commits an assault if he intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." *Umana v. Kroger Texas, L.P.*, 239 S.W.3d 434, 436 (Tex. App—Dallas 2007, no pet.).

Though Janet claims that she was assaulted, Janet's deposition offers conflicting testimony about her experience getting into the wheelchair. Janet testified that someone "forced [her] into a wheelchair." In the next few lines, she said that "[she's] not saying [she] objected to the wheelchair." She also stated that she was "very happy to see the wheelchair, because, without Eric to hold onto, [she] would have been on the ground."

Janet's own testimony undercuts the idea that she was assaulted. Moreover, Janet has not presented evidence that a Pavilion employee assaulted her because she cannot identify who purportedly forced her into the wheelchair. Thus, we agree with the district court's dismissal of Janet's claim.

Eric's assault claim is a different story. Eric argues that Harshaw grabbed his arm while Eric, Janet, and Harshaw traveled to the Pavilion's security office. Eric says that Harshaw grabbed his arm, that he experienced pain, and that he told Harshaw that he was in pain. Harshaw does not dispute

No. 20-20387

that he grabbed Eric, but he claims that he was justified in doing so because Eric pushed him. Eric denies pushing Harshaw.

Moreover, Harshaw argues that he grabbed Eric for less than a minute and that he let go when Eric told him that he was in pain. Harshaw responds by saying that Eric impliedly consented because Eric did not immediately tell him that his contact was offensive or provocative. Even so, "[t]he issue of consent as a defense is an issue of fact to be determined by a jury." *Allen v. State*, 273 S.W.3d 689, 693 (Tex. App—Houston [1st Dist.] 2008, no pet.).

Since both parties acknowledge that Harshaw grabbed Eric, our analysis turns on whether a reasonable person could deem the contact offensive or provocative. Harshaw argues that the contact was so brief that no reasonable juror could find it offensive, and he cites *Picard v. City of Dallas*, 3:10-CV-634-K, 2011 WL 3758806, at *9 (N.D. Tex. Aug. 25, 2011), *aff'd*, 467 F. App'x 327 (5th Cir. 2012). In *Picard*, the district court granted summary judgment against a plaintiff who accused her co-worker of assaulting her by touching her back and shoulders because there was no evidence that the co-worker knew that his contact was offensive. *Id.* Here, however, a reasonable juror could conclude that Harshaw's contact was offensive. By Harshaw's own account, he grabbed Eric after Eric shoved him. It is not inconceivable that Harshaw grabbed Eric in a manner or a degree that a reasonable person could find offensive. While Harshaw's contact may have ultimately been inoffensive, it is difficult to conclude as much as a matter of law.

Harshaw additionally relies on *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613 (7th Cir. 1989), but that case is also distinguishable. In *Schroeder*, the court granted summary judgment on a battery claim where a flight attendant took the plaintiff by the arm and led her to the cockpit. *Id.* at 622. In affirming the summary judgment, the Seventh Circuit noted that the

plaintiff voluntarily walked to the cockpit with the flight attendant and failed to indicate that she was harmed or offended by the flight attendant's alleged touching. *Id.* Unlike the plaintiff's silence in *Schroeder*, Eric told Harshaw that it hurt when he grabbed him.

Harshaw's final response to Eric's assault claim is that Eric has failed to present evidence of damages. The Prims sought actual damages for assault. Harshaw insists that summary judgment was appropriate because the Prims failed to prove how the assault caused their damages. Texas law does not require the Prims to prove physical or personal injury to sustain an assault claim. *See Sanchez v. Striever*, 614 S.W.3d 233, 240 (Tex. App.—Houston [14th Dist.] 2020, no pet.). "As offensive physical contact is the gravamen of the claim, the defendant is liable for contacts that are offensive and provocative regardless whether they cause physical harm." *Id.* Eric is thus not required to prove damages to survive summary judgment on his assault claim.

Since Harshaw grabbed Eric and a reasonable person could find that contact offensive, we reverse the district court's summary judgment on Eric's assault claim. We affirm the summary judgment on Janet's assault claim.

### 2. False Imprisonment

The Prims contend that Harshaw falsely imprisoned them when he escorted them to the security office and lacked "legal authority or valid reasons to arrest or detain Eric or Janet." The Pavilion Defendants respond by pointing to the lack of evidence that Harshaw detained the Prims or otherwise instigated their detention by officers.

"The essential elements of false imprisonment are: (1) willful detention; (2) without consent; and (3) without authority of law." *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002) (quoting *Sears,*

*Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985)). "[L]iability for false imprisonment extends beyond those who willfully participate in detaining the complaining party to those who request or direct the detention." *Id.* at 507 (citing *Joske v. Irvine*, 44 S.W. 1059, 1063 (Tex. 1898)). "False imprisonment's first element may thus be satisfied by conduct that is intended to cause one to be detained, and in fact causes the detention, even when the actor does not participate in the detention." *Id.* "[M]erely reporting a crime and the suspected criminal to law enforcement authorities does not constitute procurement of criminal proceedings when the authorities exercise discretion in deciding whether to prosecute." *Id.* at 509.

There is no genuine factual dispute about whether Harshaw personally detained the Prims by escorting them to the security office. The Prims did not present evidence that Harshaw forced them to go the security office or that Harshaw detained them once they arrived at the office.

There is no factual dispute about Harshaw's alleged role in instigating the Prims' detention by the police. Though Harshaw told the officers that the Prims need to be arrested, there is no evidence that the officers acted at Harshaw's request or that the Prims otherwise would not have been arrested. For example, Lieutenant Webb testified in her deposition that she conducted an independent analysis of Janet and made the decision to arrest Janet herself. We affirm the summary judgment on the Prims' false imprisonment claim.

### 3. Negligence

The Prims next argue that the Pavilion is liable for the negligent supervision and training of Harshaw. The Pavilion Defendants disagree, arguing that the Prims did not present evidence of negligent supervision. We agree.

To prevail on a negligent-supervision claim against an employer, the plaintiff must prove that the employer owed him a duty to supervise its

employees, that the employer breached that duty, and that the breach proximately caused the plaintiff's injuries. *See Knight v. City Streets, L.L.C.*, 167 S.W.3d 580, 584 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Even if we assume that the Pavilion owed the Prims the duty to supervise Harshaw, there is no evidence that the Pavilion breached that duty. Harshaw approached the Prims after he noticed Janet's stumbling, called for a wheelchair for Janet, and escorted them to the security office. Even if Harshaw committed a tort against the Prims, the Prims have failed to demonstrate how the Pavilion was negligent in its supervision of Harshaw. We affirm the summary judgment on this issue.

### 4. Respondeat Superior

Next, the Prims assert that the Pavilion is liable for Harshaw's actions through respondeat superior. "To hold an employer liable for the actions of its employee, a claimant must prove (1) an agency relationship existed between the employee [] and the employer []; (2) the employee committed a tort; and (3) the tort was in the course and scope of the employee's authority." *Id.* at 582–83 (citing *Baptist Memorial Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998)).

There is a genuine factual dispute on Eric Prim's assault claim. Because Harshaw was an employee of the Pavilion, whether Harshaw is liable for assault—and if so, whether he was acting within the scope of his employment with the Pavilion—present genuine factual disputes as to this claim against the Pavilion. We thus reverse and remand this issue to the district court.

### B. Montgomery County Officers' Qualified Immunity Defense

The Prims alleged that the Montgomery County officers violated the Fourth Amendment by arresting them without probable cause. The officers moved for summary judgment based on qualified immunity, and the district

court granted the motion. We agree that the officers are entitled to qualified immunity.

"A warrantless arrest must be based on 'probable cause.' Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000).

Even if the officers lacked probable cause for the Prims' arrests, "[q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Osborne v. Harris Cnty, Tex.*, 97 F.Supp.3d 911, 923 (S.D. Tex. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The Prims were arrested for public intoxication under Texas Penal Code section 49.02(a), which prohibits "appear[ing] in a public place while intoxicated to the degree that the person may endanger the person or another." Eric had difficulty standing, bloodshot eyes, and slurred speech. He admitted to drinking throughout the night and twice failed the nystagmus test. Though the Prims' expert's report concludes that they were not intoxicated because of the timing of their alcohol and food consumption, this does not resolve the question at hand—whether officers could *reasonably infer* that the Prims were intoxicated based on the totality of the circumstances. *See Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018). Since Eric exhibited symptoms of intoxication and failed the nystagmus test, the officers reasonably inferred that Eric was intoxicated.

But section 49.02 requires more than mere intoxication. The officers also needed reason to think that Eric was a danger to himself, though "[t]he danger need not be immediate." *Gallagher v. State*, 778 S.W.2d 153, 154 (Tex.

App.—Houston [1st Dist.] 1989, no pet.). Though Eric claims that there was no reason to think he was a danger to himself or others, his deposition testimony dooms his argument. The Prims insisted on walking the "mile [or] mile and a half" back to their home, across Woodlands Parkway and several other intersections. Given their apparent intoxication, inability to stand without assistance, and the length and path of their route home, the officers reasonably concluded that the Prims posed a danger to themselves or others.

As to Janet, the Prims argue that the officers lacked probable cause because Janet's stumbling, red eyes, and inability to stand were caused by her MS. Even if Janet is correct that her MS caused her to appear intoxicated (rather than the alcohol that she admittedly consumed), the officers are still shielded by qualified immunity. Janet appeared intoxicated, and "probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts." *Wesby*, 138 S. Ct. at 588. On review, we only ask "whether a reasonable officer could conclude—considering all of the surrounding circumstances, including the plausibility of the explanation itself—that there was a 'substantial chance of criminal activity.'" *Id.* at 588 (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)).

The officers observed Janet stumbling and unable to stand without assistance. She admitted to drinking on the night of the concert. A reasonable officer could have concluded that Janet was intoxicated and that she posed a danger to herself or others if she tried to walk home with Eric. The officers had probable cause to arrest Janet. We thus affirm the summary judgment in favor of the County and its officers.

No. 20-20387

*C. ADA and Rehab Act Claims*

Janet asserted ADA and Rehab Act claims against the County, the Pavilion, and Live Nation.[5] The district court granted summary judgment on each of the Prims' claims. We agree with the district court.

*1. Title II of the ADA*

Janet argues that both the County and the Pavilion violated Janet's rights under Title II of the Americans with Disabilities Act. That section provides that "no qualified individual with a disability shall, by *reason of such disability*, be excluded from participation in or be denied the benefits of the services, programs, or activities *of a public entity* or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (emphasis added). A public entity is a state or local government, agency or department of a state or local government, and select railroad and commuter authorities. *Id.* at § 12131.

Both claims are deficient. Janet's Title II claim against the Pavilion fails because the Pavilion is a private entity, not a public entity within the meaning of the ADA. Nor is it a railroad or commuter authority. As for Janet's claim that the County violated Title II by not giving its officers proper training, the County persuasively notes that there is no evidence that Janet was discriminated against "by reason of her disability." There is also no evidence that Janet was denied a reasonable modification in accessing the County's benefits or services. *Frame v. City of Arlington*, 657 F.3d 215, 231 (5th Cir. 2011) (explaining that Title II may require reasonable

---

[5] The Prims did not present evidence that Eric has a disability within the meaning of the ADA.

modifications). Because there is no evidence that Janet faced discrimination because of her MS diagnosis, we affirm the district court's judgment.

### *2. Rehab Act Claims*

Janet also lodges Rehab Act claims against both the Pavilion and the County, to no avail. We agree with the district court's grant of summary judgment.

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity *receiving Federal financial assistance* or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794 (emphasis added).

Again, the Pavilion does not fit within the statute's definitions. The Pavilion is a private, non-profit entity and it does not receive federal financial assistance. It is not amenable to suit under the Rehab Act. On the other hand, the County's operations do fit within the statute's definition of program or activity. *See id.* at § 794(b). Still, Janet has failed to prove that she was denied participation or benefits based on her disability. We affirm the district court.

### *3. Title III of the ADA*

Janet also asserts Title III claims against the Pavilion. Though the Pavilion is amenable to suit under Title III, Janet has failed to present a genuine factual dispute. We agree with the district court's grant of summary judgment.

Title III of the ADA prohibits "discriminat[ion] . . . on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a

No. 20-20387

place of public accommodation." 42 U.S.C. § 12182. Janet has not demonstrated that she was discriminated against based on her disability, so her claims fail.

Janet specifically points to two claims under Title III, an architectural barrier claim and a policy modification claim. As for her architectural barrier claim, Janet must have presented some record evidence that (1) the Pavilion has a barrier and (2) the removal of the barrier is readily achievable. *See* 42 U.S.C. § 12182(b)(2)(A)(iv). Even if Janet is correct that various features[6] of the Pavilion create a barrier of some sort, she did not present evidence that the barrier's removal was readily achievable.

To the extent that Janet also asserts a claim that the Pavilion failed to implement a policy modification under Title III, she has failed to identify a policy, practice, or procedure to modify. *See id.* at § 12182(b)(2)(A)(ii). Moreover, there is no evidence "that a modification was requested and that the requested modification is reasonable." *Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1059 (5th Cir. 1997). We thus affirm the district court.

## IV. CONCLUSION

For the aforementioned reasons, the district court's judgment is AFFIRMED in part and REVERSED and REMANDED in part.

---

[6] Janet points to several features of the Pavilion including the spotlights and strobe lights that are used during concerts.