# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 19, 2022

Lyle W. Cayce
Clerk

No. 21-10366

Odell Edwards, *individually and as the representative of* The Estate of Jordan Edwards, deceased, Vidal Allen, and Kevon Edwards

*Plaintiff—Appellee*,

Shaunkeyia Keyon Stephens; Rhonda Washington; Maxwell Everette; Maximus Everette

*Intervenor Plaintiffs—Appellees*,

*versus*

Roy Oliver,

*Defendant/Intervenor Defendant—Appellant*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:17-CV-1208

---

Before King, Graves, and Ho, *Circuit Judges*.

King, *Circuit Judge*:

Jordan Edwards, a fifteen-year-old boy, was shot and killed while leaving a house party by then-Officer Roy Oliver, who had responded to a 911 call about possible underage drinking. Edwards's family and friends sued

No. 21-10366

Oliver and the City of Balch Springs alleging excessive force, and later Oliver was separately convicted of murder. Oliver's summary judgment motion asserted his entitlement to qualified immunity, and the district court denied the motion. We DISMISS Oliver's interlocutory appeal of the order denying qualified immunity for lack of jurisdiction and REMAND for further proceedings.

## I. BACKGROUND

On April 29, 2017, fifteen-year-old Jordan Edwards attended a party at a house in Balch Springs, Texas (east of Dallas) with his two brothers and two friends. The house is situated on the south side of Baron Drive, a residential road that runs east-west and originates on the east end in a "T" intersection with Shepherd Lane.

At around 11 p.m., Balch Springs Police Department officers Roy Oliver and Tyler Gross arrived at the house in response to a 911 call about possible underage drinking. The partygoers dispersed, and the boys returned to their car parked on Baron Drive near the "T" intersection with Shepherd Lane. Jordan Edwards's brother, Vidal Allen, got in the driver's seat, and Jordan got in the front passenger seat, with the three other boys in the back seat.

While the officers were in the house talking with the party host, gunfire erupted from a parking lot on the east side of Shepherd Lane. Officer Gross exited the house and immediately walked east. Officer Oliver also exited the house but walked to his squad car to retrieve his semi-automatic rifle before beginning to walk east.

While Vidal drove his car slowly, in reverse, on Baron Drive toward Shepherd Lane, Officer Gross, approaching on foot, yelled at the car to stop. Officer Oliver continued to walk east along Baron Drive from his squad car,

2

No. 21-10366

and eventually started jogging toward the intersection where Officer Gross was.

Once Vidal got into the intersection, he put the car in drive and proceeded southbound on Shepherd Lane. It is at this critical point—when Vidal started driving forward on Shepherd Lane rather than in reverse—where the parties dispute what happened.[1] Officer Oliver argues that Vidal accelerated toward Officer Gross, whereas the plaintiffs-appellees claim that the vehicle was not close to Officer Gross when it proceeded forward and that Officer Gross was never in the path of the vehicle.

When Officer Oliver arrived at the intersection, the car was accelerating past Officer Gross,[2] and Oliver fired five shots at the car's passenger side as it headed southbound on Shepherd Lane, away from the officers in the "T" intersection.

One bullet struck Jordan in the head, killing him. Three days after the incident, on May 2, 2017, the Balch Springs Police Department terminated Oliver's employment. Then, on May 5, 2017, Jordan's father, Odell Edwards, and his two (now adult) brothers, Vidal Allen and Kevon Edwards, filed complaints against the City of Balch Springs and Oliver, alleging, among other things, a violation of 42 U.S.C. § 1983 for the use of excessive force contrary to the Fourth Amendment.[3]

---

[1] The two officers' body-camera videos, relied on by both parties, can be viewed at:

(1) https://www.ca5.uscourts.gov/opinions/pub/21/21-10036-Gross-Bodycam.mp4

(2) https://www.ca5.uscourts.gov/opinions/pub/21/21-10036-Oliver-Bodycam.mp4

[2] Oliver's first shot was made shortly after Officer Gross was close enough to the back passenger-side window to hit it with his pistol, breaking the window.

[3] Intervenor-Plaintiffs include Jordan's mother and two of the car's passengers and their mother. Jordan Edwards's brothers have agreed to settle their claims against both the

3

No. 21-10366

While the civil suit was pending, on August 28, 2018, a jury found Oliver guilty of murder. The Texas Court of Appeals affirmed Oliver's conviction. *Oliver v. State*, No. 05-18-01057-CR, 2020 WL 4581644, at *1 (Tex. App.—Dallas Aug. 10, 2020, pet. granted).[4] Oliver was sentenced to fifteen-years imprisonment.

Then, in September 2020, Oliver moved for summary judgment in the civil suit on the basis of qualified immunity. The magistrate judge denied the summary judgment motion, concluding that "a reasonable jury could conclude the car full of teenagers presented no immediate threat to the officers' safety, making Oliver's use of deadly force unreasonable." The district court issued an order accepting the magistrate judge's findings, conclusions, and recommendation and denying Oliver's motion for summary judgment.. Oliver appeals this decision.

## II. STANDARD OF REVIEW

"District court orders denying summary judgment on the basis of qualified immunity are . . . reviewed *de novo*." *Kokesh v. Curlee*, 14 F.4th 382, 390 (5th Cir. 2021). Cases like this one "involve[] multiple legal standards, corresponding to qualified immunity, summary judgment, . . . and the Fourth Amendment." *Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020). And the "intersection of these standards gets tricky," especially how "[q]ualified immunity changes the nature of the summary-judgment burden, how and

City of Balch Springs and Oliver, but that settlement had not been approved and fully executed by the parties as of February 23, 2022.

[4] The Texas Court of Criminal Appeals granted Oliver's petition for discretionary review. Oliver's petition argued for immunity under *Garrity v. New Jersey*, 385 U.S. 493 (1967), for Oliver's statements made to law enforcement. Oliver's appeal remains pending.

when the burden shifts, and what it takes to satisfy the burden." *Id*. at 328–29.

Rule 56 of the Federal Rules of Civil Procedure requires summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In other words, summary judgment is appropriate when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In qualified immunity cases, "[t]he plaintiff must show that there is a genuine dispute of material fact and that a jury could return a verdict entitling the plaintiff to relief." *Joseph*, 981 F.3d at 330. "But, to overcome qualified immunity, the plaintiff's version of those disputed facts must also constitute a violation of clearly established law." *Id.*

Complicating our task further, "[w]hen a defendant invokes qualified immunity," and the district court *denies* the defendant's motion for summary judgment, "it affects our jurisdiction in two ways—'we review earlier than we otherwise would, and we review less than we otherwise would.'" *Kokesh*, 14 F.4th at 391 (quoting *Joseph*, 981 F.3d at 330). First, we allow an interlocutory appeal "even though denials of summary judgment are not generally final, appealable orders under 28 U.S.C. § 1291." *Id.* (citations omitted); *see Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 490 (5th Cir. 2001) (discussing the collateral order doctrine). Second, "the district court's finding that a *genuine* factual dispute exists is a factual determination that this court is prohibited from reviewing in this interlocutory appeal." *Kokesh*, 14 F.4th at 390 (quoting *Good v. Curtis*, 601 F.3d 393, 397 (5th Cir. 2010)). Thus, "in reviewing the denial of qualified immunity, we accept the district court's determination that there are genuine fact disputes." *Id.* at 391 (citation omitted); *see Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc) ("[W]e lack jurisdiction to review the *genuineness* of a fact issue but have

jurisdiction insofar as the interlocutory appeal challenges the *materiality* of [the] factual issues." (quoting *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016))). Instead we ask only "whether the factual disputes that the district court identified are *material* to the application of qualified immunity." *Samples v. Vadzemnieks*, 900 F.3d 655, 660 (5th Cir. 2018).

Accordingly, to avoid an improper review of the genuineness of this case's facts, we consider *only* whether the district court correctly assessed the legal significance—that is, the materiality—of the disputed facts in plaintiffs-appellees' Fourth Amendment excessive force claim.

## III. MATERIAL FACT DISPUTE

"To determine whether a denial of summary judgment based on qualified immunity is immediately appealable, this Court looks at the legal argument advanced." *Reyes v. City of Richmond*, 287 F.3d 346, 350 (5th Cir. 2002). "An officer challenges materiality when he contends that 'taking *all* the plaintiff's factual allegations as true no violation of a clearly established right was shown.'" *Id.* at 351 (quoting *Cantu v. Rocha*, 77 F.3d 795, 803 (5th Cir. 1996)).

On appeal Oliver argues that the facts at the moment of the threat are undisputed and urges this court to exercise jurisdiction over the case on the issue of materiality. "[D]espite giving lip service to the correct legal standard, [Oliver's] argument does not take the facts in a light most favorable to the [p]laintiffs. In fact, significant portions of his argument assume facts different from those assumed by the [m]agistrate [judge]." *Id.*

For example, Oliver invites us to consider the fact that Oliver "heard the window shatter right next to Gross," which may have "sounded like a gunshot," making it "reasonable to think it was a gunshot." Although the magistrate judge acknowledges the fact that the officers heard gunfire while they were in the house, nowhere in the magistrate judge's findings,

conclusions, and recommendation does the magistrate judge credit Oliver's factual assertion about a possible gunshot from the car's occupants. Oliver argued in his summary judgment motion (and again on appeal) that he was "[i]nstinctively/involuntarily reacting to the perceived gunshot/violence from the Suspect Car towards [Officer] Gross." This argument invites us to "assume facts different from those assumed by the [m]agistrate [judge]." *Id.* As such, it is not a challenge to the materiality of the disputed facts, but rather an attack on the magistrate judge's factual determination. We do not have jurisdiction to consider such an argument. *Id.* at 350–51; *Kokesh*, 14 F.4th at 391.[5]

Furthermore, the extent of the car's threat to Officer Gross is the factual question at the heart of this case, and despite Oliver's argument to the contrary, it is a genuinely *disputed* question. Oliver describes that the car accelerated "towards/near/by" Officer Gross, whereas plaintiffs assert that Officer Gross was never in the path of the vehicle. The magistrate judge identified this as the crux of the factual dispute warranting denial of summary judgment: "[T]he body-camera footage sufficiently raises a fact question. . . [about the car's] threat of harm to [Officer] Gross because it was moving away" from him.

---

[5] Oliver also attempts on appeal to expand the relevant factual scenario to include the "escalating circumstances" of a potential "active shooter" situation, and the dissenting opinion follows suit, *see post*, at 4, suggesting that "[i]f anything, the perceived risk might have been greater in this case" relative to *Irwin v. Santiago*, No. 21-10020, 2021 WL 4932988 (5th Cir. Oct. 21, 2021), pointing to the series of gun shots that the officers heard while they were in the house. This expansion of the relevant factual scenario fails not only because it is outside the magistrate judge's findings but also because "[t]he excessive force inquiry is confined to whether the [officer] was in danger *at the moment of the threat* that resulted in the [officer's] shooting." *Bazan*, 246 F.3d at 493. The threat resulting in the officer's decision to shoot was the accelerating car, not the multiple gunshots the officers heard while in the house well before they were even in the vicinity of a moving vehicle.

Importantly, the resolution of this factual dispute is material because it affects both whether Oliver's use of force was reasonable and whether the force he used violated clearly established law. *See Prim v. Stein*, 6 F.4th 584, 590 (5th Cir. 2021) ("A [disputed] fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." (quoting *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000))). Oliver argues that the force he used was not unreasonable, and even if it was unreasonable, it was not clearly established to be so on April 29, 2017. Our precedent in *Lytle v. Bexar County* holds that the use of deadly force against a fleeing suspect who poses insufficient harm to others violates clearly established law. 560 F.3d 404, 417-18 (5th Cir. 2009) (focusing on the extent of the "threat of harm to the officer or others" when the car was moving away from the officer).

Oliver points to a recent unpublished case from our court, *Irwin v. Santiago*, No. 21-10020, 2021 WL 4932988, at *3 (5th Cir. Oct. 21, 2021), for the proposition that an officer's position "standing 'toward the front' " of a moving car precludes *Lytle*'s applicability for purposes of the "clearly established" prong. But to reach that conclusion, we would have to resolve the factual dispute as to whether Officer Gross was standing toward the front of, toward the back of, or behind the car at the time that Oliver fired his shots. Unlike in *Irwin*, viewing the facts at issue here in the plaintiffs' favor, the district court stated Officer Gross was toward the back of the car, or behind the car, as it accelerated down Shephard Lane and before Oliver fired his shots. In fact, the parties dispute how close Officer Gross was to the car such that he could hit the *back* window with his gun before Oliver fired.

The dissenting opinion asserts that the "central question in this case is whether" the videos in *Irwin* "are meaningfully distinguishable" from the videos at issue here. *See post*, at 1. Although it is tempting to engage in such a factual comparison, to do so would be inappropriate because, unlike the *Irwin*

panel (which was reviewing a final judgment of a *grant* of qualified immunity), we are reviewing an interlocutory appeal—that is, an appeal of a *denial* of qualified immunity. On an interlocutory appeal, "we review less than we otherwise would." *Kokesh v. Curlee*, 14 F.4th 382, 391 (5th Cir. 2021) (quoting *Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020)). Specifically, when the lower court finds "that a *genuine* factual dispute exists" we are prohibited from reviewing its genuineness. *Id.* at 390 (quoting *Good v. Curtis*, 601 F.3d 393, 397 (5th Cir. 2010)). Here, the lower court specifically found a factual dispute, and taking the facts in the light most favorable to the plaintiffs, found that "neither Oliver nor Gross was positioned in front of the [moving] car when Oliver opened fire."

Our dissenting colleague encourages us to conduct a direct comparison of the two cases' videos[6] and conclude that the threat posed to Officer Gross was akin to the threat posed to Officer Santiago, who— according to the *Irwin* panel conducting a de novo review of a final judgment granting qualified immunity—"was standing 'toward the front'" of the moving vehicle when the officers began shooting. 2021 WL 4932988, at *3. Conducting a comparison of the two videos would not only run counter to our court's binding precedent regarding the scope of our role in interlocutory appeals in qualified immunity cases, but the conclusion our dissenting colleague would have us draw from that comparison would also implicitly overturn the lower court's determination that a genuine factual dispute exists.

---

[6] We also note that the footage in the present case, compared to the footage in *Irwin*, offers considerably less certainty about the position of the purportedly at-risk officer relative to the moving car at the time that deadly force was used. This added uncertainty further counsels restraint in this interlocutory appeal.

Furthermore, despite the dissenting opinion's comparison of this case to *Irwin* and statement that both cases involve cars driving *away* from an officer, *see post*, at 1, 4-5, the panel in *Irwin* stated that "the projected path of Irwin's vehicle was in the officer's direction, at least generally," and distinguished that fact from other cases where the car "was moving *away* from the officer," *Irwin*, 2021 WL 4932988, at *3 (emphasis added). If we were to compare the two cases, this case is unlike *Irwin* in that, here, the district court determined that a resolution of the factual disputes in the plaintiffs' favor places Officer Gross toward the back of or behind the car, not in the projected path of the car (where the front tires were facing southbound), and that the car was moving *away* from the Officer Gross when Oliver fired his shots. We need not say that *Irwin* was wrongly decided, nor do we attempt to. Rather, we say only that the factual dispute in this case is not the same as that in *Irwin*.

Because an analysis of the clearly established prong is fact-intensive, "courts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions." *Kokesh*, 14 F.4th at 392 (quoting *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)). As such, "[w]e find that if a jury accepts Plaintiffs' version of the facts as true, particularly as to what occurred in the moments before [Oliver] shot [at the car], the jury could conclude that the officers violated [Plaintiffs'] clearly established right to be free from excessive force." *Amador v. Vasquez*, 961 F.3d 721, 730 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1513 (2021); *see also Flores v. City of Palacios*, 381 F.3d 391, 400 (5th Cir. 2004) (stating the resolution of whether shooting into tires in "circumstances such as these" depended on the dispute of material fact and affirming the denial of summary judgment); *Joseph*, 981 F.3d at 342 (denying qualified immunity at the summary judgment stage because there was a dispute of material fact). Moreover, to the extent that Oliver argues that the car's threat is immaterial to the excessive-force analysis, we disagree

No. 21-10366

and find it material to the excessive force claim. *Lytle*, 560 F.3d at 409, 418 (5th Cir. 2009). Because the factual dispute is material, "we lack jurisdiction to consider the propriety of the summary judgment denial." *Bazan*, 246 F.3d at 493. We leave it to the jury to weigh the disputed facts.

## IV. CONCLUSION

For the foregoing reasons, we DISMISS Oliver's interlocutory appeal. The case is REMANDED for further proceedings.

No. 20-30406

J<small>AMES</small> C. H<small>O</small>, *Circuit Judge*, dissenting:

In my view, the central question in this case is whether the events depicted in the videos taken from the body cameras of Officers Roy Oliver and Tyler Gross, *see ante*, at 3 n.1, are meaningfully distinguishable from the bodycam video at issue in *Irwin v. Santiago*, 2021 WL 4932988, at *1 n.1 (5th Cir.).

If there is a meaningful distinction here, then we should explain what it is. But if there isn't one, then we should reach the same outcome as we did in *Irwin*—entry of summary judgment based on qualified immunity. Barring that, we should at least explain why we think our court's unanimous but unpublished, non-precedential decision in *Irwin* is incorrect.

For my part, I see no principled difference between the video evidence in *Irwin* and the videos in this case. In both cases, the driver of an automobile appears to be trying to escape a police officer by driving *away* from him—not by running him over. In both cases, the officer was nevertheless close enough to the anticipated path of the automobile that he theoretically could have been hit and badly injured as a result.

So a reasonable viewer of the videos may be troubled by the callous conduct of the officers in both cases—or unconcerned because of the hypothetical threat to officer safety in both cases. But the reaction should be the same.

And that should decide this case. Because in *Irwin*, our court concluded that the officers may well have violated the Fourth Amendment, due to the absence of immediate danger of harm—but that any such violation was not "clearly established," so the officers were entitled to qualified immunity. *Id.* at *3. And *Irwin* was decided well after the events in this case. So if the law wasn't clearly established at the time of *Irwin*, then it wasn't clearly established here, either.

No. 21-10366

To be sure, a good case can be made that we should not require plaintiffs under 42 U.S.C. § 1983 to identify a "clearly established" violation of law. *See*, *e.g.*, *Horvath v. City of Leander*, 946 F.3d 787, 795, 800–03 (5th Cir. 2020) (Ho, J., concurring in the judgment in part and dissenting in part). But we are of course bound by that requirement as a matter of longstanding Supreme Court precedent. *See*, *e.g.*, *Lefebure v. D'Aquilla*, 15 F.4th 650, 663 (5th Cir. 2021) (noting "our obligation to follow Supreme Court precedent, whether we like it or not"). And that precedent entitles Oliver to qualified immunity here, just as our court held in *Irwin*.[1]

## I.

The panel majority concludes that we need not—and indeed cannot—decide whether the videos in this case are comparable to the video in *Irwin*. According to the panel, that's a fact dispute for a jury to resolve, not a qualified immunity question for this court to decide. *See ante*, at 8-9.

But it's not clear to me why that is. We all agree that, on interlocutory appeal from the denial of qualified immunity, we do not address whether a fact dispute is *genuine*—but we *do* address whether a fact dispute is *material*. *See*, *e.g.*, *Lytle v. Bexar Cty.*, 560 F.3d 404, 408 (5th Cir. 2009) ("Where the district court has determined that genuine issues of material fact preclude a determination of qualified immunity, we have jurisdiction only to address the

---

[1] Qualified immunity also explains why our decision in this case is not dictated by Oliver's state court criminal conviction. Unlike a federal habeas proceeding—where a state court criminal conviction would be entitled to deference—this is a § 1983 action, where a prior state court judgment is given no deference in a later federal action because "the defense[] of . . . qualified immunity . . . [was] not available" in the prior state proceeding. *Gutierrez v. Coughlin*, 841 F.2d 484, 486 (2nd Cir. 1988). Moreover, there is also the fact that Oliver's conviction remains pending on appeal, following the grant of discretionary review by the Texas Court of Criminal Appeals, as the panel majority notes. *Ante*, at 4 n.4.

legal question of whether the genuinely disputed factual issues are material for the purposes of summary judgment.").

And we all agree that any fact dispute, no matter how genuine, is immaterial "[i]f the defendant would still be entitled to qualified immunity under [the plaintiff's] view of the facts"—and that in such cases, "denial of summary judgment [is] improper, and we must reverse." *Id.* at 409.

Finally, we all agree that Oliver properly presented a materiality argument on appeal. He argues that there's no clearly established violation in this case, citing *Irwin*. And he invites us to compare this case to the bodycam video in *Irwin*.

The panel majority acknowledges all of this. It agrees that we "lack jurisdiction to review the *genuineness* of a fact issue but have jurisdiction insofar as the interlocutory appeal challenges the *materiality* of the factual issues." *Ante*, at 5-6 (quoting *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc)) (cleaned up). And it agrees that a fact dispute is immaterial, and the defendant is entitled to qualified immunity, when, "'taking *all* the plaintiff's factual allegations as true[,] no violation of a clearly established right was shown.'" *Ante*, at 6 (quoting *Reyes v. City of Richmond*, 287 F.3d 346, 351 (5th Cir. 2002)).

So it's not clear to me why the panel responds by explaining why it is improper for us to review the *genuineness* of a fact dispute—a point that is both undisputed and irrelevant to this appeal.

In any event, my point is simply this: I see no principled reason why we should depart from what our colleagues did in *Irwin*. Both here and in *Irwin*, there was a genuine fact dispute—but an immaterial one for purposes of qualified immunity.

In *Irwin*, the parties genuinely disputed, among other things, whether the vehicle was accelerating toward or away from the officer—a quintessential fact question. We nevertheless held that the dispute was immaterial as to whether the officers violated clearly established law.

That's because, even accepting the plaintiff's view that "[n]either officer 'was positioned directly in front of or in the pathway of [the] vehicle,'" the facts as depicted in the bodycam video were "not sufficiently analogous to" prior authorities such that the officers "would have been 'on notice' that their conduct was unconstitutional." *Irwin*, 2021 WL 4932988, at *1, *3.

So the fact dispute identified by the panel here is virtually identical to the dispute in *Irwin*: Oliver says the vehicle accelerated toward Gross, while Plaintiffs say Gross was never in the vehicle's path.

If that dispute was immaterial in *Irwin*, it's immaterial here as well.

## II.

Plaintiffs' efforts to distinguish the videos here and in *Irwin* are unconvincing. During oral argument, Plaintiffs' counsel claimed that the officer was in greater danger in *Irwin* than here due to their relative proximity to the automobiles. But I see nothing in the videos to support such a claim. In both cases, an officer was plausibly, albeit not likely, within the anticipated path of the automobile.

In fact, if anything, the perceived risk might have been greater in this case: Here, the officers were responding to a series of gun shots, and ran to the scene on a dark street late at night with limited visibility—facts not present in *Irwin*, and undisputed here.

The panel majority responds that it must ignore these facts because they have nothing to do with how the officers perceived the very different

threat of the accelerating car. *See ante*, at 7 n.5. But that ignores the fact that the officers believed they were in hot pursuit of the shooter, just moments after the shooting, when they were confronted with an accelerating car controlled by a driver who refused to obey police instructions. Although the use of deadly force likely violated the Fourth Amendment under *Irwin*, the violation wasn't clearly established, as *Irwin* itself confirms.

The panel majority also invokes the fact that, in *Irwin*, our court noted that "'the projected path of Irwin's vehicle was in the officer's direction, *at least generally*.'" *Ante*, at 10 (quoting *Irwin*, 2021 WL 4932988, at *3) (emphasis added). But the same thing is true in this case, as the videos here and in *Irwin* readily confirm.

Finally, the panel majority suggests a potential distinction based on the timing of the shots fired in this case and in *Irwin*. *See ante*, at 10. But to be clear, we're talking about *less than a second* here. To their credit, Plaintiffs' counsel during oral argument disclaimed any meaningful reliance on the timing of the shots fired here as compared to *Irwin*.

And even putting all of this aside, one central problem remains: To overcome qualified immunity, Plaintiffs (and the panel majority) must demonstrate that the constitutional violation here was clearly established. So what authority clearly establishes the constitutional violation in this case? There is none. And that's the whole point of *Irwin*—that there is no such authority, at least none before *Irwin* itself.

\* \* \*

If *Irwin* is wrong, we should say so. It's unpublished. So we're not bound by it. We're subject only to persuasion by the respected members of that panel.

No. 21-10366

But I'm not prepared to say that *Irwin* was wrongly decided. And nor, it appears, is the panel majority. *See ante*, at 10.

Our legal system is premised on the principle of treating like cases alike. *See*, *e.g.*, H.L.A. HART, THE CONCEPT OF LAW 163–64 (3d ed. 2012). We should follow that principle here. I respectfully dissent.