# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 1, 2022

Lyle W. Cayce
Clerk

No. 21-40457

Frances Earline Sims, *individually and as dependent administrator of*
The Estate of Steven Mitchell Qualls,

*Plaintiff—Appellee*,

*versus*

Toderick D. Griffin; Sterling Ramon Linebaugh;
Heather Rene O'Dell,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:20-CV-124

Before Willett, Engelhardt, and Wilson, *Circuit Judges*.
Don R. Willett, *Circuit Judge*:

Steven Mitchell Qualls, 28, spent the last 34 hours of his life on a jailhouse floor, enduring a slow, agonizing death as his body shut down following a drug overdose. Unable to stand or speak coherently, Qualls moaned in pain, twitched, thrashed, convulsed, hallucinated, vomited multiple times (throwing up a dark black liquid and part of a plastic bag), and repeatedly cried out for help. Help never came. By the time officers noticed

No. 21-40457

Qualls was dead on the floor, rigor mortis had already set in. Said one non-defendant officer: "I should have looked, but, you know, oh well."

The district court denied qualified immunity to the jail officers, finding that a reasonable jury could conclude that officers turned a blind eye to Qualls's severe—and worsening—medical distress despite his repeated pleas for help and knowing he had ingested a bag full of narcotics. We AFFIRM.

I

Steven Mitchell Qualls was a known drug abuser. One day EMS took him to the hospital for "chest pains, agitation, and tachycardia." About five hours later Qualls was discharged, but he refused to sign his discharge papers or leave the hospital. The hospital called the police. Police arrived and escorted Qualls out. Minutes later the police arrested Qualls for public intoxication. In between his release from the hospital and arrest by police, though, Qualls may have furtively ingested a bag full of drugs.

Two officers, Sergeant Griffin and Officer Linebaugh, took Qualls to the Jasper City Jail for booking. Linebaugh tried to ask Qualls questions to complete the booking process. But Qualls was obviously intoxicated. He mumbled answers to some questions, ignored others, and at times simply answered "no." Given his state, Griffin allowed Qualls to stay in his street clothes rather than put on the standard jail attire. Following booking, Griffin and Linebaugh escorted Qualls to the jail's detox cell. It was the last time Qualls ever walked on his own.

Once in his cell, Qualls's medical condition steadily worsened. He did not sleep or eat. He started incoherently calling out to jail staff:

- "I need a hospital please. I [inaudible] and my leg . . . [inaudible]."

2

No. 21-40457

- "Help. Help. Help. Help. I'm sick. I'm . . . I think it's like a f*cking . . . ."
- "Help. Please. Please. Ugh."

About ten hours after he arrived at the jail, Qualls first vomited "a dark black liquid, which he smeared around on the floor and rubbed his face in." He remained lying in his own vomit, unable to comply with Dispatcher O'Dell's instructions to remove himself by simply "roll[ing] over." When the officers picked Qualls up to clean him and his cell, he screamed in pain. O'Dell asked if she needed to call EMS. Griffin told her not to. O'Dell asked what she should do if Qualls threw up again. Linebaugh told her to just "let him," and laughed that he didn't want to "hold [Qualls's] hair."

Qualls vomited more black liquid about three hours later. As before, Qualls was left face down in his own bile and screamed in pain when the officers tried to move him. But the situation quickly grew *more* dire. While cleaning the vomit, Griffin and Linebaugh noticed "a small tied-off piece of a bag"—the kind used to hold illegal narcotics—"on the floor covered in Qualls's vomit." About four hours after that, Qualls vomited black liquid a third time. He then began to cry out to the officers. Qualls did so at least 62 times. And he made noises of pain at least 70 times. Yet no one came. Five hours later, Qualls was dead.

Qualls's mother, Frances Earline Sims, sued under 42 U.S.C. § 1983 shortly after her son's death. Sims alleges that Griffin, Linebaugh, and O'Dell all violated Qualls's constitutional rights.[1] The officers moved for summary judgment on the ground of qualified immunity. The district court denied the officers' motion. It found genuine disputes of material fact

---

[1] Sims also brought § 1983 claims against the City of Jasper and detective Joshua Hadnot. But the district court dismissed both.

No. 21-40457

surrounding Sims's claims that the officers were deliberately indifferent to Qualls's serious medical needs. And it concluded that the law was clearly established at the time of that violation. The officers now appeal.

## II

We review de novo the district court's denial of qualified immunity.[2] But because this is an interlocutory appeal, our review is "circumscribed."[3] We lack jurisdiction to decide whether the fact disputes the district court identified are *genuine*. Rather, we review whether those fact disputes are *material*.[4] That is, whether they "might affect the outcome of the lawsuit."[5]

Sims, though, contests our jurisdiction to hear this appeal. She argues that the officers only challenge the *genuineness* of the fact disputes the district court found—precisely what we lack jurisdiction to review at this stage. We disagree with Sims's characterization of the officers' appeal, though. As explained more fully below, the officers' appeal raises issues that do not implicate the district court's genuineness analysis. We do not lose jurisdiction over an entire appeal just because we lack jurisdiction to review some of the issues raised.[6] We therefore DENY Sims's motion to dismiss.

---

[2] *Roque v. Harvel*, 993 F.3d 325, 332 (5th Cir. 2021).

[3] *Kokesh v. Curlee*, 14 F.4th 382, 391 (5th Cir. 2021).

[4] *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc) ("[W]e lack jurisdiction to review the *genuineness* of a fact issue but have jurisdiction insofar as the interlocutory appeal challenges the *materiality* of [the] factual issues." (quoting *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016))).

[5] *Kokesh*, 14 F.4th at 401 (Willett, J., dissenting) (quoting *Prim v. Stein*, 6 F.4th 584, 590 (5th Cir. 2021)).

[6] *See Cunningham v. Castloo*, 983 F.3d 185, 190 (5th Cir. 2020) ("The mere fact that the district court said that, in its view, material factual disputes preclude summary judgment does not deprive us of interlocutory appellate jurisdiction.").

## III

The officers contend the district court erred by denying them summary judgment. We have explained the qualified-immunity inquiry many times. We review both "(1) whether the defendant violated the plaintiffs' constitutional or statutory rights; and (2) whether those rights were clearly established at the time of the violation."[7] The officers argue that the district court erred by finding fact disputes supporting a constitutional violation and concluding the law was clearly established. We disagree with the officers on both issues.

## A

The parties agree that Qualls had a constitutional right to not "have [his] serious medical needs met with deliberate indifference on the part of the [officers]."[8] But the officers *do* dispute whether they violated it. Under our caselaw, "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."[9] Sims admits that she can show deliberate indifference only for each officer who (1) was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) actually "dr[ew] the inference."[10] Under that standard, the fact disputes the district court found are material.

---

[7] *Roque*, 993 F.3d at 331.

[8] *See Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001) (citations omitted).

[9] *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

[10] *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 755 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)) (emphasis removed). The officers apparently believe that Sims must also show that they "subjectively intend[ed] harm to befall

From Linebaugh's and Griffin's perspectives, the district court found a reasonable jury could conclude that Qualls was "intoxicated on meth when he arrived [at the Jail]"; had "swallowed a bag full of drugs" between leaving the hospital and arriving at the stationhouse; had yelled for help; had asked to go to the hospital; had "vomited black liquid multiple times"; and had gotten "worse instead of better over the duration of his detention in the detox cell." From O'Dell's perspective, the district court found that a reasonable jury could conclude that Qualls: "was a drug user"; got "worse instead of better over the duration of his detention in the detox cell"; "scream[ed] for help"; "ask[ed] for a hospital"; "vomited multiple times" and "had swallowed a bag full of drugs." Those fact disputes might affect whether Qualls's need for treatment was so apparent that even laymen would have recognized that care was required. They also might affect whether each officer was aware of facts from which he or she could have inferred that Qualls was subject to a substantial risk of serious harm.

The district court made additional findings. It found a reasonable jury could conclude the officers knew about those facts, that they "sought no medical care for Qualls for the thirty-four hours he was in the detox cell," and that it was "plainly evident" to them that Qualls's injuries were "severe." Those fact disputes might affect whether each officer actually

[Qualls]," pointing to our unpublished decision in *Estate of Allison v. Wansley*, 524 F. App'x 963, 971–72 (5th Cir. 2013) (per curiam) (citation omitted). As Sims notes, though, we have already clarified our caselaw: Plaintiffs need not prove this subjective-intent element. *See Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020); *see also id.* at 383–84. Sims also argues for "error preservation" purposes that we should replace our deliberate-indifference test with a simple "objective standard" since Sims was a pretrial detainee. The parties agree that this issue is foreclosed, however, and so we will not address it further. *See generally Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 419 n.4 (5th Cir. 2017) (making clear the rule of orderliness requires that adherence to the subjective standard, as embraced in *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996)).

No. 21-40457

inferred that Qualls was subject to a substantial risk of serious harm, yet did not seek medical care for him.

Even so, the officers contend that the district court erred by finding fact disputes on a constitutional violation. They argue that "the record [is] contrary" to the district court's findings; that they all "cared" for, "monitored," "responded to," and "provided" for Qualls; that they "cleaned" Qualls and his cell when he vomited; that "there is simply no record evidence demonstrating [they] knew or even believed Qualls was under the influence of [drugs]," let alone the amount; and that no evidence supports they knew "Qualls needed any medical care" beyond what he had received. Maybe the jury will agree. But these arguments do not address why the fact disputes the district court did find cannot affect the outcome of Sims's lawsuit—the *materiality* inquiry.[11] Rather, they go to whether a reasonable jury could return a verdict for Sims on this evidence—the *genuineness* inquiry,[12] which we lack jurisdiction to review at this stage.[13] Therefore, we cannot address these arguments by the officers.

---

[11] *Prim*, 6 F.4th at 590 (citation omitted).

[12] *Id.*

[13] *Melton*, 875 F.3d at 261.

No. 21-40457

B

Under our caselaw,[14] Sims must also show that Qualls's "rights were clearly established at the time of the violation."[15] A right is clearly established only once it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[16] Sims contends she has met that burden. She argues both that the law was sufficiently clear and that the officers' conduct was obviously unconstitutional.[17] The officers disagree. As we agree with Sims that the law was clearly established, we need not decide whether the officers' conduct was obviously unconstitutional.

To show the law was sufficiently clear when the officers violated Qualls's rights, Sims cannot define the "contours" of Qualls's rights too generally. Rather, Qualls's rights must be defined "with a high degree of particularity."[18] That means Sims must "identify a case" or "body of

---

[14] Sims objects to our caselaw assigning her the burden to show the law was clearly established at the time of an alleged violation. *See Darden v. City of Ft. Worth*, 880 F.3d 722, 727 (5th Cir. 2018) ("Once an official pleads qualified immunity, 'the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law.'" (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010))). Because our precedent forecloses Sims's argument, we need not address it further. *See United States v. Bernard*, 762 F.3d 467, 482 (5th Cir. 2014) (explaining that "[w]e need not address" what is "foreclosed by precedent").

[15] *Roque*, 993 F.3d at 331.

[16] *Id.* at 334 (quoting *Mullenix v. Luna*, 577 U.S. 7, 11–12 (2015)).

[17] Sims also argues, for error-preservation purposes, that "[t]he judicially created defense of qualified immunity should be abolished." Whatever the merits of Sims's argument, though, she points to no authority supporting that our panel can overturn decades of Supreme Court and circuit caselaw. "As middle-management circuit judges, we cannot overrule the Supreme Court." *Whole Woman's Health v. Paxton*, 978 F.3d 896, 920 (5th Cir. 2020) (Willett, J., dissenting), *rev'd en banc*, 10 F.4th 430 (5th Cir. 2021). Therefore, we will not address it further.

[18] *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011).

8

relevant case law" holding that "an officer acting under similar circumstances . . . violated the [Constitution]."[19] She did.

The district court concluded, and Sims contends on appeal, that our decision in *Easter v. Powell* clearly established Qualls's rights. In *Easter*, a case decided well before Qualls's death, we explained that a prisoner can show his clearly established rights under the Eighth Amendment were violated if a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[20] *Easter*'s facts fit within that standard: "offer[ing] no treatment options to a patient with a history of cardiac problems who was experiencing severe chest pains."[21]

The officers in this case acted similarly to the prison official in *Easter*. As recounted above, the district court found material fact disputes over whether all three officers acted deliberately indifferent towards Qualls. That means a reasonable jury could conclude on the evidence at this stage that each officer knew Qualls had swallowed a bag full of drugs, vomited multiple times, screamed for help, pleaded to go to the hospital, and had steadily deteriorated since his arrival at the jail. Further, a reasonable jury could conclude that no officer sought medical assistance for Qualls. In other words, a reasonable jury could find that the officers each refused to treat Qualls, ignored his cries for help, and overall evinced a wanton disregard for Qualls's

---

[19] *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)).

[20] *Easter v. Powell*, 467 F.3d 459, 465 (5th Cir. 2006) (per curiam) (quoting *Domino*, 239 F.3d at 756).

[21] *Id.*

serious medical needs. The officers' three counter arguments do not persuade us otherwise.

*First*, the officers argue that the record does not support that they *refused* to treat Qualls. We disagree. As we already explained, the district court found a genuine fact dispute over whether each officer knew Qualls had asked to go to the hospital, and no officer took him or otherwise sought medical assistance for him. But even if it were true that the officers didn't technically refuse to treat Qualls, it's also of little consequence. Even if a jury merely finds that the officers *ignored* Qualls's complaints or otherwise evinced a wanton disregard for his serious medical needs, then that would still be enough to support a violation of Qualls's rights.[22] So whether the officers *refused* Qualls's requests, or merely *disregarded* them, makes no difference on this record.

*Second*, the officers argue that the district court and Sims identify "nothing more than the 'broad general propositions' [we have] repeatedly held 'are not enough to overcome qualified immunity.'" But in the same breath the officers footnote their agreement that we have clearly established it violates a prisoner's rights if officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for serious medical need." That's exactly what a reasonable jury could conclude on this record, and so this argument fails to persuade us.

*Third*, the officers imply that *Easter* is distinguishable because the officers here monitored Qualls, provided him sustenance, spoke with him, cleaned him and his cell, and so on. But those facts aren't as helpful to the officers as they think. Prominently missing in this record are any facts

---

[22] *See id.*

suggesting the officers addressed Qualls's serious *medical* needs—what matters under *Easter*.[23] More importantly, these facts capture in a nutshell why the officers aren't entitled to qualified immunity at this point. On this record and without considering genuineness, the officers had a front-row seat to Qualls's agonizing demise but did *nothing* to stop it.

## IV

Our review at this stage is hemmed in. Perhaps the jury will discount Sims's evidence.[24] Perhaps not. All we can say now is that (1) the fact disputes identified by the district court are material to Sims's deliberate indifference claims, and (2) our decision in *Easter* clearly established Qualls's rights before the officers allegedly violated them. AFFIRMED.

---

[23] *Id.*

[24] Qualified immunity remains a live issue for trial. *See* PATTERN CIV. JURY INSTR. 5TH CIR. 10.3 (2020).