# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 2, 2022

Lyle W. Cayce
Clerk

No. 21-51127

Steven Macias, Heirs of Fernando Macias and Representative of the Estate of Fernando Macias; Yvonne Shilling, Heirs of Fernando Macias and Representative of the Estate of Fernando Macias; Walter Macias, Heirs of Fernando Macias and Representative of the Estate of Fernando Macias,

*Plaintiffs—Appellees*,

*versus*

Sheriff Javier Salazar; Laura Balditt,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:21-CV-193

Before Stewart, Elrod, and Graves, *Circuit Judges*.

Per Curiam:*

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-51127

The plaintiffs filed this civil rights lawsuit against Bexar County, Texas and several officials, bringing claims arising out of the death of Fernando Macias while in the local jail. The defendants moved to dismiss the lawsuit, asserting the defense of qualified immunity. The district court denied in part and granted in part the defendants' motion. For the reasons that follow, we REVERSE and RENDER judgment, dismissing the defendants from this lawsuit on the basis of qualified immunity.

## I. Facts & Procedural History

On March 6, 2018, the Bexar County Sheriff's Office responded to a call that Fernando Macias was having a mental health crisis and threatening his mother's safety. The situation escalated into a shootout between Macias and "the Texas Rangers SWAT team." When the dust settled, Macias had suffered a nonfatal gunshot wound and law enforcement had accidentally shot and killed his mother. Law enforcement then arrested Macias and took him to a local hospital, where he was treated for his wound. The hospital discharged Macias later that month, whereupon he was booked into the Bexar County Adult Detention Center ("BCADC"). At the time, Macias weighed over 300 pounds. Medical records indicate that he also suffered from schizoaffective disorder, delusional disorder, renal failure, and liver failure, though it is unclear from the complaint when these maladies were diagnosed.

Macias's condition deteriorated during his detention. In September 2018, a court found him incompetent to stand trial. Accordingly, Macias was listed for transfer to a state mental health hospital, but there was "a significant backlog in the system," so he remained at BCADC. He was not expected to receive a placement in the state facility until the next year. In November 2018, Macias was admitted into the BCADC infirmary. Meanwhile, he "refused his dialysis treatment and other daily needs, another indication of his deteriorating mental capacity and mental illness." Allegedly,

he "was not placed under the care of a psychiatrist or other mental health provider while in custody of the jail." Instead, according to the plaintiffs' complaint, the local hospital "provided medical and mental health care to [him] while he was incarcerated," though they also allege later in their complaint that Macias did not receive any mental health treatment during his detention.

On December 2, 2018, Macias was readmitted to the local hospital, where he stayed until his return to the BCADC infirmary on December 11. By this time, he had developed sepsis, a life-threatening condition that occurs when an infection triggers inflammation throughout the body. Macias was hospitalized again on December 15, 2018. Upon this hospitalization, he weighed 196 pounds, remained septic, had pressure sores, and was missing nail beds on his toes. In addition, his blood pressure and pulse were low, he was dehydrated and suffering from hypoxia, and his potassium level was dangerously high. Macias died the next day.

The plaintiffs filed suit under 42 U.S.C. § 1983 on behalf of Macias's estate. As relevant here, they named Sheriff Javier Salazar and Laura Balditt as defendants. Sheriff Salazar is the Bexar County Sheriff. He supervises the BCADC. Balditt was the BCADC's assistant jail administrator during Macias's detention. As such, she was responsible for BCADC's daily operations. The plaintiffs alleged, among other things, that Sheriff Salazar and Balditt violated Macias's Fourteenth Amendment right to adequate medical care while detained by failing to train or supervise their employees.

The defendants filed a motion to dismiss the operative complaint. They asserted that the plaintiffs failed to state a claim upon which relief could be granted and that they were entitled to the defense of qualified immunity. The district court denied the motion in part. Relevantly, it concluded that the plaintiffs adequately stated claims against Sheriff Salazar and Balditt for

deliberate indifference to Macias's serious medical needs, and that qualified immunity did not apply. The defendants timely appealed the district court's denial of qualified immunity.

## II. Standard of Review

This court can review a district court's order denying a motion to dismiss on the basis of qualified immunity "only to the extent that the appeal concerns the purely legal question [of] whether the defendants are entitled to qualified immunity on the facts[.]" *Armstrong v. Ashley*, 918 F.3d 419, 422 (5th Cir. 2019) (quoting *Kinney v. Weaver*, 367 F.3d 337, 347 (5th Cir. 2004) (en banc)). We also have jurisdiction to review the sufficiency of a complaint on interlocutory appeal when that issue is "inextricably intertwined" with the denial of qualified immunity. *Ashcroft v. Iqbal*, 556 U.S. 662, 673–74 (2009) (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 51 (1995)).

When this court has jurisdiction, it reviews de novo the district court's denial of a motion to dismiss asserting qualified immunity, accepting all well-pleaded facts as true and viewing them in the light most favorable to the plaintiff. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). A plaintiff seeking to overcome a motion to dismiss based on qualified immunity must plead facts that allow the court to reasonably infer that the defendant is liable for the harm alleged. *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020). The alleged facts must "defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

## III. Discussion

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (per curiam), *cert. denied*, 142 S. Ct. 2571 (2022)). To do so at the pleading stage, the plaintiffs must allege

(1) the violation of a federal constitutional or statutory right; and (2) that the right was clearly established at the time. *Id.* This court "may tackle these questions in whatever order it deems most expeditious." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

We begin and end with the second prong of the qualified immunity analysis—whether the right at issue was clearly established. The plaintiffs allege that the defendants violated Macias's clearly established Fourteenth Amendment right, as a pretrial detainee, "not to have [his] serious medical needs met with deliberate indifference on the part of the confining officials." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (quoting *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001)). "[A] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Sims v. Griffin*, 35 F.4th 945, 949 (5th Cir. 2022). Such a need "may exist for psychological or psychiatric treatment, just as it may exist for physical ills." *Hare v. City of Corinth*, 74 F.3d 633, 642 (5th Cir. 1996).

The plaintiffs seek to hold the defendants liable as supervisors. "Supervisory officials cannot be held liable under [§] 1983 for the actions of subordinates . . . on any theory of vicarious or *respondeat superior* liability." *Est. of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). But "[a] supervisor may be held liable under § 1983 for failure to train or supervise subordinates if (1) the supervisor failed to train or supervise; (2) a causal link exists between the failure and violation of plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Brown v. Callahan*, 623 F.3d 249, 254 n.1 (5th Cir. 2010). "Deliberate indifference is 'a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Id.* at 255. (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). This "normally requires a plaintiff to show a pattern of violations

and that the inadequate training or supervision is 'obvious and obviously likely to result in a constitutional violation.'" *Id.* (quoting *Est. of Davis*, 406 F.3d at 381–82).

The parties dispute whether the plaintiffs plausibly alleged a violation of Macias's rights under the Fourteenth Amendment. But we need not resolve that issue because, even assuming a violation occurred, the defendants' conduct was not objectively unreasonable in light of clearly established law. "Showing that a right is clearly established 'is difficult,' and this showing is made only when 'it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Parker v. Blackwell*, 23 F.4th 517, 522 (5th Cir. 2022) (quoting *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020)). Indeed, "[a]n official that violates a constitutional right is still entitled to qualified immunity if his or her actions were objectively reasonable." *Perniciaro v. Lea*, 901 F.3d 241, 255 (5th Cir. 2018). Moreover, the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

The district court held that the defendants violated Macias's clearly established right to be free from deliberate indifference to his "basic human needs, including medical care and protection from harm." *Hare*, 74 F.3d at 650. But that proposition is defined too generally to defeat the defendants' assertion of qualified immunity here. *See Mullenix*, 577 U.S. at 12. As the defendants observe, neither the district court nor the plaintiffs identified any binding authority holding jailers liable for failing to provide medical care to a detainee who refused treatment. Instead, this court has held that it is not "clearly established that any jailer . . . must either force a conscious, incompetent, but clearly refusing inmate to undergo medical treatment or seek a surrogate decision-maker for the same. Neither is there any statutory

duty [under Texas law] to *impose* medical care or locate a surrogate in these or similar circumstances." *Thompson*, 245 F.3d at 460–61 (emphasis in original). Thus, plaintiffs have not alleged a violation of clearly established law.

Despite this lack of clearly established law, this court must nonetheless consider whether the defendants' "actions were objectively reasonable in light of that law that was then clearly established." *Id.* at 461. We conclude that the defendants satisfied this standard. Again, we emphasize that pretrial detainees have a clearly established right "not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Dyer*, 964 F.3d at 380 (quoting *Thompson*, 245 F.3d at 457). But the plaintiffs do not allege that the defendants ignored Macias's serious medical needs. Rather, they allege that Macias was admitted to the BCADC infirmary, where he was seen by multiple heath care providers before he was twice admitted to the local hospital. These health care providers attempted to treat Macias, but he "refused his dialysis treatment and other daily needs." "Given the absence of even a single case constitutionally requiring the imposition of medical care . . . in this or any similar context," it could not have been clear to every reasonable official that the defendants' conduct would have violated Macias's rights. *Thompson*, 245 F.3d at 461.

To be sure, the plaintiffs also allege that Macias did not receive mental health treatment during his detention. And mental health issues may qualify as a serious medical need that cannot be met with deliberate indifference. *Hare*, 74 F.3d at 642. But elsewhere in their complaint the plaintiffs acknowledge that the local hospital "provided medical and mental health care to Fernando Macias while he was incarcerated" at BCADC. Macias was also listed for placement in the state mental health hospital. Although the plaintiffs allege that the defendants did not provide Macias with a psychiatrist

or other mental health specialist while detained, they do not identify any precedent holding that doing so was constitutionally required where, as here, all agree that the detainee rejected most medical attention and nevertheless received some mental health treatment in jail while awaiting transfer to another facility for specialized care. Accordingly, the defendants' conduct was objectively reasonable in light of clearly established law. They were thus entitled to qualified immunity, and the district court erred to the extent that it concluded otherwise.

## IV. Conclusion

For the foregoing reasons, we REVERSE the district court's denial of qualified immunity and RENDER judgment for the defendants.