# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 28, 2024

Lyle W. Cayce
Clerk

————————

No. 23-40369

————————

Frances Earline Sims, *Individually and as dependent administrator of* the Estate of Steven Mitchell Qualls,

>                                                                   *Plaintiff—Appellant*,

*versus*

City of Jasper, Texas; Toderick D. Griffin; Sterling Ramon Linebaugh; Heather Rene O'Dell; Joshua L. Hadnot,

>                                                                   *Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:20-CV-124

———————————————————————

Before Southwick, Haynes, and Graves, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:

This appeal requires us to decide whether a district court abused its discretion in refusing to bifurcate the liability and damages phases of trial. The Plaintiff, individually and as dependent administrator of her son's estate, sued the City of Jasper, Texas, and certain police officers after her son died while in custody. The Plaintiff argued that the liability and damages phases of the jury trial needed to be bifurcated to avoid evidence related to damages

from swaying the jury on the Defendants' liability.  The district court denied the motion, and the jury found for the Defendants.  We AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

Steven Mitchell Qualls, who was 28 years old, died in police custody from an overdose of methamphetamine on January 30, 2019.  *Sims v. Griffin*, 35 F.4th 945, 947–48 (5th Cir. 2022).  Less than 72 hours earlier, on the night of January 28, emergency medical services ("EMS") took Qualls to Jasper Memorial Hospital in Jasper, Texas, for "chest pains, agitation, and tachycardia."  *Id.* at 948.  After treatment, Qualls refused to leave the hospital.  *Id.*  Police were called, and they escorted him outside.  *Id.*  He was then arrested for public intoxication.  *Id.*

Sergeant Toderick Griffin and Officer Sterling Linebaugh, two of the Defendants, took Qualls to the Jasper City Jail for booking.  *Id.*  He was booked at around 10:22 p.m. on January 28.  At the time, Qualls was highly intoxicated and could not answer standard booking questions, so the officers placed him in a detox cell.  *Id.*  The officers did not change Qualls out of his street clothes as would have been customary policy.  *Id.*  At some point, possibly around the time he was being booked, Qualls swallowed a baggie that likely contained methamphetamine.  *Id.*  "Once in his cell, Qualls's medical condition steadily worsened."  *Id.*  "He started incoherently calling out to jail staff," yelling for help several times.  *Id.*

At approximately 7:00 p.m. on January 29, Qualls began vomiting "a dark black liquid, which he smeared around on the floor and rubbed his face in."  *Id.*  Dispatcher Heather O'Dell, another Defendant, instructed Qualls to "roll" out of his vomit, but he was unable to comply.  *Id.*  Linebaugh then picked Qualls up to clean him and his cell, causing Qualls to scream in pain.  *Id.*  O'Dell asked Griffin if they should call EMS for help and "Griffin told her not to."  *Id.*  When O'Dell asked what she should do if Qualls vomited

again, Linebaugh responded that she should "let him," and he "laughed that he didn't want to 'hold [Qualls's] hair.'" *Id.* (alteration in original).

A few hours later, at around 10:00 p.m., Qualls again vomited a black liquid, laid in it for a while and smeared it around, and screamed in pain when officers tried to move him from his bile. *Id.* A few hours after that, Qualls vomited a third time and began crying out to officers. *Id.* No one came to help. *Id.* Several hours later, approximately 33 hours after booking, Qualls was dead. *Id.*

Qualls's mother, Frances E. Sims, in her individual capacity and as administrator of Qualls's estate, sued Griffin, Linebaugh, O'Dell, Detective Joshua L. Hadnot, and the City of Jasper under 42 U.S.C. § 1983. She alleged the officers were deliberately indifferent to Qualls's serious medical needs and thereby violated his rights under the 14th Amendment; she sought damages for Qualls's wrongful death. Sims further claimed the City of Jasper was liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for the officers' alleged misconduct. Sims also asserted claims on behalf of Qualls's minor child as his heir.

On the Defendants' motion for summary judgment, the district court dismissed the claims against Hadnot and the City of Jasper but denied summary judgment on qualified immunity grounds for Defendants Griffin, Linebaugh, and O'Dell. *Sims v. City of Jasper*, 543 F. Supp. 3d 428, 444, 452 (E.D. Tex. 2021). This court affirmed the denial of qualified immunity on interlocutory appeal. *Sims*, 35 F.4th at 952. Thereafter, Sims filed a motion to bifurcate the liability and damages phases of trial, arguing the Defendants intended to introduce evidence of Qualls's prior bad acts and criminal and drug history, the strained relationship between Sims and Qualls, and other prejudicial evidence. Although Sims conceded some evidence may be relevant to the issue of damages, she argued it was irrelevant to the issue of liability,

3

would be unfairly prejudicial, and would confuse the jury. The Defendants opposed the motion.

The district court held a two-day pretrial conference to determine Sims's bifurcation motion and other evidentiary issues. Although the court recognized the possible prejudicial effect of introducing the evidence highlighted in Sims's motion, it denied the motion. The court reasoned that this case was like another unnamed case litigated to the plaintiff's satisfaction and the jury would hear the evidence eventually. The court was also concerned that bifurcation in this case might encourage future litigants to seek bifurcation in other cases. The district court then considered the Federal Rule of Civil Procedure 42(b) factors — convenience, prejudice, and expedition and economy — and found those factors weighed against bifurcation.

At trial, Sims relied on substantially the same evidence presented at summary judgment, which we have already summarized. *See id.* at 948. This evidence included a series of closed-circuit television videos showing the events leading to Qualls's death. The jury was shown these videos throughout the trial. The jury also heard testimony and evidence about Qualls's extensive criminal history and drug use, disputes with Sims that led her to call the police numerous times, and his strained relationship with his son and his son's mother, Casey Hutto.

The jury found none of the Defendants liable. The district court entered final judgment against Sims based on the verdict. Sims then filed a motion for a new trial, which the district court denied. Sims timely appealed both orders.

## DISCUSSION

We review the denial of a motion to bifurcate for abuse of discretion, recognizing the matter is "within the sole discretion of the trial court." *Nester v. Textron, Inc.*, 888 F.3d 151, 162 (5th Cir. 2018) (quoting *First Tex.*

*Sav. Ass'n v. Reliance Ins. Co.*, 950 F.2d 1171, 1174 n.2 (5th Cir. 1992)). "An abuse of discretion exists only when there is definite and firm conviction that the court below committed clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Conkling v. Turner*, 18 F.3d 1285, 1293 (5th Cir. 1994) (quotation marks and citation omitted). This court has previously warned that bifurcation "is not the usual course that should be followed, and that the issue to be tried must be so distinct and separable from the others that a trial of it alone may be had without injustice." *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 318 (5th Cir. 1978).

The denial of a motion for a new trial is also reviewed for abuse of discretion. *Carley v. Crest Pumping Techs., LLC*, 890 F.3d 575, 578 (5th Cir. 2018). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985) (footnotes omitted).

The primary issue on appeal is whether the district court abused its discretion in denying Sims's motion to bifurcate the liability and damages phases of trial.[1] Before proceeding to that issue, however, we find it useful to recount what Sims had to prove to the jury regarding the individual officers' liability.

---

[1] Sims raises two additional issues to preserve them for Supreme Court or en banc review. She argues the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), requires applying an objective standard to officers' conduct in all pretrial detainee cases, including deliberate indifference cases. She also argues that we should abolish the defense of qualified immunity. As the prior panel noted, both arguments are foreclosed by this court's or the Supreme Court's precedent. *Sims*, 35 F.4th at 950 n.10, 951 n.17. We therefore do not address them.

## I.    *Deliberate indifference towards pretrial detainees*

As we explained during the Defendants' qualified-immunity appeal, "[t]he parties agree that Qualls had a constitutional right to not 'have [his] serious medical needs met with deliberate indifference on the part of the [officers].'" *Sims*, 35 F.4th at 949 (second and third alteration in original) (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001)). "Under our caselaw, '[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required.'" *Id.* (alteration in original) (quoting *Golbert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006)). To prove deliberate indifference, Sims had to show that each Defendant "(1) was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) actually 'dr[ew] the inference.'" *Id.* at 949–50 (alteration in original) (quoting *Dimon v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 755 (5th Cir. 2001)).

We apply a subjective standard for pretrial detainee deliberate indifference claims "based on episodic acts or omissions," as is the case here. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017) (quotation marks and citation omitted). Sims did not need to prove that the Defendants "subjectively intend[ed] harm to befall" Qualls. *Sims*, 35 F.4th at 950 n.10 (alteration in original) (citation omitted). Instead, subjectivity arises in the context of what the individual Defendants were actually aware and the inferences they actually drew at the time. *See Hare v. City of Corinth*, 74 F.3d 633, 648–49 (5th Cir. 1996) (en banc); *see also Garza v. City of Donna*, 922 F.3d 626, 635–36 (5th Cir. 2019). The reason for applying the subjective standard is to focus our inquiry on the constitutional violation. *Hare*, 74 F.3d at 649–50. Error or negligence, even when grossly committed, is not a constitutional violation. *Id.* at 645. Inflicting punishment on pretrial detainees, however, violates the Fourteenth Amendment's Due Process Clause. *Id.* at

650. In this context, "[p]unishment is inflicted only when a prison official *was aware* of a substantial risk of serious harm to a convicted inmate but was deliberately indifferent to that risk." *Id.* at 649 (emphasis in original).

With these principles in mind, we proceed to the bifurcation issue.

## II.    *Bifurcation*

Sims argues the district court's refusal to bifurcate the liability and damages phases of trial was unduly prejudicial and essentially converted the proceedings to a trial of Qualls's character and relationship with his mother. She also argues the issues of liability and damages could have been separated easily without loss of efficiency or economy while preventing undue prejudice because there would have been little, if any, overlap between the evidence and witnesses on each issue and the same jury would try both phases.

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." Fed. R. Civ. P. 42(b). Convenience, efficiency, and economy are obviously important considerations that go to a district court's inherent discretion to manage its docket. *See In re Stone*, 986 F.2d 898, 903 (5th Cir. 1993); 8 Moore's Federal Practice § 42.23 (Matthew Bender 3d ed.). Avoiding prejudice, though, seems to be given heightened weight, at least to the extent it is necessary to reverse an order to bifurcate. *See* 9A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2392 (3d ed. 2024). At least one prior panel of this court has expressed support for this view. *See Malin Int'l Ship Repair & Drydock, Inc. v. Veolia Es Special Servs., Inc.*, 369 F. App'x 553, 556 (5th Cir. 2010). We will assess each factor.

At the same time, we must not displace the district court's discretion with our own. As a highly "case-specific procedural matter," bifurcation is "within the sole discretion of the trial court, and we will not reverse the court's decision absent an abuse of that discretion." *Nester*, 888 F.3d at 162–63 (citation omitted). In reviewing the Rule 42(b) factors, therefore, we will reverse only if we are left with a "definite and firm conviction" that a "clear error of judgment" occurred. *Conkling*, 18 F.3d at 1293 (quotation marks omitted).

### a.    Convenience

At the pretrial conference, the district court implied that bifurcation would not "lead to convenience" because it would require two trials and "the jury is ready to go." Sims argues bifurcation in this case would have been more convenient because only one jury was requested for the liability and damages phases and a finding against her on the former would eliminate the need for trial on the latter. The same could be said, however, in any case where liability and damages are both at issue, so this argument only goes so far. There is no contention that denying or granting Sims's bifurcation motion would have inconvenienced any party's trial preparation or witnesses or raised new or complex issues. *See* 8 MOORE'S FEDERAL PRACTICE § 42.20. Thus, we agree that this factor likely weighs against bifurcation out of convenience to the jury, and there appears no "clear error of judgment" in the district court's weighing of this factor. *Conkling*, 18 F.3d at 1293.

### b.    Expedition and economy

The district court concluded bifurcation would not expedite and economize the trial of Sims's claims but acknowledged this was a close call. The district court distinguished this case from those where bifurcation may be more clearly expeditious, such as those involving counterclaims or third-party claims. Sims's argument that bifurcation would aid efficiency is the

8

same as her argument on convenience: if the jury ruled against her on liability, there would be no need for a damages phase. In contrast, the district court speculated that if the jury found in Sims's favor on liability, the damages phase "could well equal . . . time-wise the liability phase." There is no contention that trial of one claim would preclude the need to try another claim or ancillary issues like a statute of limitations or liability release. *See* 8 Moore's Federal Practice § 42.20. Thus, like convenience, this factor weighs against bifurcation, and there was no "clear error of judgment" by the district court. *Conkling*, 18 F.3d at 1293.

### c.     *Avoiding prejudice*

The most disputed factor is prejudice against Sims. In her bifurcation motion, Sims identified the type of evidence the Defendants sought to introduce at trial, recognized that it might be relevant to damages, but argued it would be irrelevant and highly prejudicial to liability. This included testimony on Qualls's drug use and "unstable" lifestyle, prior arrests and criminal activity, strained relationship with Sims and his minor son, failure to provide for his son, domestic disputes with his ex-girlfriend (and mother of his son), and prior altercations with Sims that led to arrests. Sims argued introducing such evidence at the liability phase would transform the trial from one on the Defendants' conduct to one on Qualls's "misbehavior and poor choices."

In considering the motion to bifurcate, the district court recognized this evidence might have "a lot of prejudicial" effect and "no probative value" as to liability. Nevertheless, the court refused to bifurcate for several reasons.

The court indicated this case was very similar to one that it recently tried. There, a woman with "a long history of criminal acts and obviously a disappointment to her family" died while in detention, and a family member,

possibly her mother, sued.  Despite this "bad evidence," the court explained that "people for both sides were very happy with the way that case was tried" without bifurcating liability and damages.[2]  The court stressed that it was not applying a "one size fits all" standard and that it "hate[s] to say we need to do it like we did in that other case."  The court ultimately concluded that bifurcation was not warranted because the jury was going to hear the prejudicial evidence eventually.  The district court explained "the jury is going to know this isn't, you know, a saint in jail," but the jury would be smart enough to separate the evidence on liability and damages.

Further, the court acknowledged that it was "making a precedent" in ruling on the motion to bifurcate and granting the motion could encourage others to seek bifurcation as well.  "I've got to think about how I run a court," it explained, "because . . . once I start bifurcating in this case, the same arguments could be made" in subsequent cases.  When Sims's attorney raised concerns that failure to bifurcate might confuse the jury, the court responded, "I am highly confident, given your expertise in these types of cases, that you're going to be able to . . . pars[e] out for the jury the testimony and the evidence . . . that have nothing to do with Ms. Sims.  And I think the jury is smart enough to . . . see the difference."

The court also considered how bifurcating could prejudice the defense, and how *not* bifurcating could benefit Sims.  Counsel for the Defendants suggested Qualls's prior drug use and arrest history were relevant to liability because it might show that Qualls previously detoxed in a similar manner without incident.  This could demonstrate the Defendants' subjective belief that his vomiting and cries of pain were simply par for the

---

[2] The court did not cite or name the case, so it is unclear whether bifurcation was sought.

course and did not indicate a serious medical need.  The district court concluded the Defendants were "entitled" to assert this defense and bifurcating could ultimately prejudice them, requiring retrial if the court's decision were later reversed.  The court also explained how presenting this defense could *benefit* Sims's case because it could "suggest that perhaps [Qualls] needs a little extra watchful care."  Ultimately, the court concluded this was "probably something that we ought to just throw . . . out there and try the case" without bifurcation.

The district court was in an understandably difficult position.  We see three significant considerations for our evaluation.

*First*, the district court's reasoning was sound.  It was reasonable for the district court to consider previous judicial experience in reaching its decision.  Indeed, the Advisory Committee Notes to Rule 42(b) recommend bifurcating "where experience has demonstrated its worth," though "separation of issues for trial is not to be routinely ordered." Fed. R. Civ. P. 42(b) advisory committee's note to 1966 amendment.  Here, the district court stated it was not employing a routine, "one size fits all" approach to bifurcation but explained that its prior experience with similar facts suggested bifurcation was unnecessary.  Similarly, no rule or statute prevented the district court from considering how granting bifurcation in this case might affect others, given the court's inherent power to manage its own docket. *See In re Stone*, 986 F.2d at 903; *see also* 9A Wright & Miller, *supra*, § 2390 (explaining how "the pressures of docket management" affect use of bifurcation).[3]

_____

[3] To be clear, bifurcation is a "case-specific" inquiry that "is not the usual course" and must be considered within the facts and context of each case. *Nester*, 888 F.3d at 163; *Blue Bird Body Co.*, 573 F.2d at 318.  A "one size fits all" approach will not do.  Our

More importantly, the district court was correct in recognizing that bifurcation might prejudice the Defendants in presenting a viable defense to liability. To repeat, for the Defendants to be liable in this episodic acts or omissions case, Sims had to prove the Defendants were actually aware of a substantial risk of serious harm, not that they "should have been aware" as a reasonable person would. *Hare*, 74 F.3d at 650. The Defendants' prior experience with Qualls, including his prior arrests, detoxing and other circumstances, were highly probative of liability.

Defendant O'Dell testified that based on her prior experience with Qualls, she expected there would be "vomiting," "noise," and "mumbling" from the detox cell that could last as long as three days. Defendant Griffin similarly testified that there were no significant differences between Qualls's 2019 arrest and detox — the subject of this case — and Qualls's incident-free arrest and detox in 2017, which Griffin personally observed. Griffin explained that based on his "similar observations" between the two events, he believed Qualls's vomiting and cries were "how [Qualls] handle[d] [his] detoxification." Although Defendant Linebaugh did not have prior experience with Qualls, he testified that he relied on O'Dell's and Griffin's representations of their past experience in assessing the situation. The jury was entitled to consider this testimony when deciding whether the Defendants "had subjective knowledge of a substantial risk of serious harm . . . but responded with deliberate indifference to that risk." *Id.* Relegating evidence and testimony of Qualls's prior arrests to the damages phase through bifurcation, therefore, would have prejudiced the Defendants.

---

conclusion above, however, merely recognizes that judicial experience and case management may be proper considerations within the broader bifurcation analysis.

*Second*, much of Sims's purported prejudice is at least equally the result of evidentiary disputes for which standard trial practices, such as objections or limiting instructions, provide protection. Sims highlights potentially prejudicial statements made by the Defendants' counsel during opening and closing statements, suggesting Sims was responsible for her son's death by refusing to pick him up from the hospital when asked to do so. Even though the district court instructed the parties that such suggestions were out of bounds, Sims failed to object to the statements at the time, which is the proper approach for challenging improper jury arguments. *See Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 375–76 (5th Cir. 1989). While Sims was testifying, her counsel also failed to object to the Defendants' line of questioning about which she now complains. To the extent those questions and testimony were overly prejudicial, confusing, misleading, or needlessly cumulative, they could have been challenged through timely objections under Federal Rule of Evidence 403 or another relevant evidentiary rule. *See* Fed. R. Evid. 103(a)(1).

Of course, Sims filed a motion *in limine* raising her evidentiary objections, and the district court ruled on them during the two-day pretrial conference. To the extent Sims wished to challenge any of those rulings, the proper approach would have been to object when the evidence or testimony was introduced at trial.[4] *See Foradori v. Harris*, 523 F.3d 477, 507 n.26 (5th Cir. 2008). Even if the district court overruled the objections, the normal course would be to seek a limiting instruction, which "often will suffice to

---

[4] Hutto, the mother of Qualls's son, testified by deposition about Qualls's familial relationships, so Sims's ability to object further at trial was limited. That said, Sims called Hutto as a witness at trial and now complains that the testimony was prejudicial. To the extent this was a litigation strategy to hedge unfavorable testimony, it was a gamble, but a gamble that does not pay out is not a basis for reversal. *See Colburn*, 883 F.2d at 376.

cure any risk of prejudice." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). This is a far "less drastic measure[]" than bifurcation of trial.[5] *Id.*

We need not address the merits of the district court's evidentiary rulings because they are unpreserved, and Sims does not assert error on appeal. *See Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987).

*Third*, we are unpersuaded that this case warrants bifurcation, which "is not the usual course that should be followed." *Blue Bird Body Co.*, 573 F.2d at 318. Sims argues courts "*routinely* sever trials to protect against prejudice to defendant police officers" in police misconduct civil rights cases. She then cites several Ninth Circuit and Texas federal district court cases bifurcating Section 1983 claims against officer defendants from *Monell* claims against municipal defendants. *Quintanilla v. City of Downey*, 84 F.3d 353, 356 (9th Cir. 1996); *Larez v. City of Los Angeles*, 946 F.2d 630, 634 (9th Cir. 1991); *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 518 (9th Cir. 1999); *Ramirez v. Escajeda*, No. 3:17-CV-193, 2021 WL 3778306 (W.D. Tex. Aug. 20, 2021); *Sanchez v. Gomez*, No. 3:17-CV-133, 2020 WL 919160 (W.D. Tex. Feb. 26, 2020). Those opinions are inapplicable because they required a finding of constitutional wrongdoing by the officer defendants before *Monell* liability could attach to the municipal defendants. *See, e.g.*, *Sanchez*, 2020 WL 919160, at *1; *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 467 (5th Cir.

---

[5] In her reply brief, Sims argues she did not need to request a limiting instruction to preserve the bifurcation issue for appeal. That is certainly correct. There is overlap in the goal of each request, but using instructions to limit the issues for which jurors should be considering evidence is clearly different than having the evidence presented in a bifurcated trial. We agree they are not the same issue. We do not address Sims's arguments on the sufficiency of limiting instructions in this case, though, because Sims failed to request one. These instructions can be helpful in limiting the evidence to what it is for (*e.g.*, damages rather than liability); such an instruction might have been useful here. *See, e.g.*, *Savoie v. Otto Candies, Inc.*, 692 F.2d 363, 370 (5th Cir. 1982).

2010). Sims's bifurcation motion did not seek to split certain claims against certain defendants from other claims against other defendants; instead, Sims sought to bifurcate the liability and damages phases of trial for all claims against all defendants. Sims's cases, therefore, are distinguishable.[6]

The parties debate the applicability of another Ninth Circuit case that is arguably more analogous to Sims's. *See Estate of Diaz v. City of Anaheim*, 840 F.3d 592 (9th Cir. 2016). That was a Section 1983 case filed by a mother seeking noneconomic damages after her son was shot and killed by a police officer during a foot chase. *Id.* at 595–96. At trial, the defense presented "a copious amount of inflammatory and prejudicial evidence" regarding Diaz's gang affiliation — including a gang expert's testimony and pictures of Diaz holding a gun — and Diaz's use of methamphetamine. *Id.* at 598–601. The gang-related evidence was initially presented as evidence of a "gang gun" theory of liability to explain why no gun had been found at the scene. *Id.* at 598–99 & n.6. Evidence of Diaz's prior drug use was initially presented to undermine the plaintiff's claim for damages from the "loss of her relationship with her son." *Id.* at 600 & n.8. Over the course of trial, however, testimony on both topics shifted from their original purposes: the gang expert testified on gang activities generally and a toxicology expert speculated Diaz's drug use may have affected his behavior on the day of the shooting. *Id.* at 599–600. The jury ultimately found the defendant officer not liable, but the Ninth Circuit reversed, holding the district court abused

---

[6] We are also not persuaded by Sims's reliance on this court's *dicta* describing bifurcation as a "common" or "oft-deployed" tool for case management. *See EEOC v. Bass Pro Outdoor World, LLC*, 826 F.3d 791, 800 (5th Cir. 2016); *Prantil v. Arkema Inc.*, 986 F.3d 570, 582 (5th Cir. 2021). Whatever might be said of bifurcation generally, it still requires an individualized, "case-specific" inquiry that "must be approached with trepidation." *Nester*, 888 F.3d at 163; *Blue Bird Body Co.*, 573 F.2d at 318 (citation omitted). Thus, the propriety of bifurcating one case is not necessarily indicative of the propriety of bifurcating another.

its discretion in refusing to bifurcate the liability and damages phases of trial. *Id.* at 597–98, 603.

Of course, the *Estate of Diaz* case is not binding on this court. We also see distinctions. The testimony regarding Diaz's prior drug use was only marginally relevant to the plaintiff's damages, but the evidence presented "at trial fixated on his drug use on the day of the incident and how it may have affected his behavior, which had *no* relevance to his mother's loss." *Id.* at 600 (emphasis in original). Instead, as the Ninth Circuit explained, this evidence went to the reasonableness of the defendant officer's conduct and resulting liability on the plaintiff's Fourth Amendment claims, despite the district court's earlier conclusion that such evidence was irrelevant to liability because the defendant did not know Diaz was intoxicated at the time of the shooting. *Id.* at 601–02 & nn.10, 11. Here, on the other hand, testimony regarding Qualls's prior drug use was relevant to liability from the beginning because it helped establish the Defendants' defense to Sims's deliberate indifference claims.

There is a closer parallel between the gang affiliation testimony in *Estate of Diaz* and testimony suggesting that Sims was at fault for refusing to pick Qualls up from the hospital and that the Defendants were not at fault because "there was nobody else there to take care of him." As previously mentioned, the district court here correctly instructed the parties not to make such suggestions, and we were clear that Sims did not need to show the Defendants "subjectively intend[ed] harm to befall" Qualls. *Sims*, 35 F.4th at 950 n.10 (alteration in original) (citation omitted). What differentiates *Estate of Diaz*, however, is that there, "[t]he following pattern arose: after improper testimony, [p]laintiffs' counsel would move to strike the testimony and the district court would state 'stricken' or 'the last part of the answer will be stricken.'" 840 F.3d at 599. The Ninth Circuit recognized this pattern was especially problematic because "gang evidence has the potential

to be particularly prejudicial." *Id.* at 602. Even though the district court issued a limiting instruction after the gang affiliation testimony was presented, the damage was already done. *Id.* at 599, 601–02. Here, by contrast, no objections were made when testimony was presented, and no limiting instruction was requested. Thus, we are not convinced the purported prejudice was the result of the district court's refusal to bifurcate, as the Ninth Circuit determined in *Estate of Diaz*. *Id.* at 602–03.

For these reasons, there was no "clear error of judgment" in the district court's weighing of the prejudice factor. *Conkling*, 18 F.3d at 1293.

\* \* \*

Sims failed to demonstrate a clear error of judgment on any of the three Rule 42(b) factors. Therefore, the district court did not abuse its discretion in denying her bifurcation motion. *See Nester*, 888 F.3d at 163. For similar reasons, Sims has not shown that "the trial was unfair, or prejudicial error was committed in its course." *Smith*, 773 F.2d at 613 (citations omitted). Thus, the district court did not abuse its discretion in denying Sims's motion for a new trial. *See Carley*, 890 F.3d at 578.

AFFIRMED.